ELWOOD C. HARRIS et al., receivers of National Building Loan and Provident Association,

*v.*

PATRICK J. NEVINS et al.

[Filed October 19th, 1904.]

1. Where a mortgage is given by a member to a building association, the insolvency of the association works a rescission of the contract, and the sum borrowed becomes immediately due and payable, regardless of the terms for payment fixed by the contract.

2. On the foreclosure of a mortgage given by a member to a building association because of the latter's insolvency, the mortgagor is entitled to have the amount of premiums paid by him deducted from the amount due on the mortgage. *Weir* v. *Granite State Provident Association*, 56 N. J. Eq. (*11 Dick.*) 234, followed.

On bill to foreclose. Heard on bill, answer, replication and proofs.

*Mr. Frederick F. Guild,* for the complainants.

*Mr. William H. Osborne,* for the defendants.

EMERY, V. C.

Complainants, as receivers in liquidation of a building and loan association, file this bill to foreclose a mortgage given by members of the association on procuring a loan from the association. The defendant Patrick J. Nevins became a member, taking out twenty-seven and one-half shares, on which one dollar per share was payable for one hundred months, which payments were, under the by-laws, to be withdrawn and the shares canceled when the net investment, together with an equitable share of the profits, amounted to $200. A loan of $5,500 was applied for by Nevins and his wife upon property belonging to both, and was granted, and the bond and mortgage now in question were executed and the shares of stock were assigned to the association as collateral security for the loan. A premium of $22 per month was bid for the loan, and the bond which was given in the penal sum of $11,000 was conditioned for the payment for one hundred months of $27.50 per month (the monthly dues), $27.50 per month as interest on $5,500 at six per cent., and $22 per month as monthly premium—in all $77 per month—and after the one hundred months the payments of interest were to be continued until the maturity of the shares. No express provision for the payment of the principal sum is contained in the bond and mortgage, except in case of default in payments on the part of the mortgagors, a condition which is not involved in this case. The defendants, upon receiving the principal of the loan (which is admitted to have been $5,000 instead of $5,500), made the monthly payments of $77 until the association went into liquidation. The whole amount of the monthly payments made on account of the premium is $682. In reference to bonds and mortgages of this character, given by borrowing members of such associations, which afterwards become insolvent, it may be considered as settled law that the insolvency works a rescission of the contract, and that the sums borrowed become immediately due and payable, regardless of the terms of payment fixed by the contract. *Weir* v. *Granite State Association, 56 N. J. Eq. (11 Dick.) 234,* and cases cited at *p. 238* (*Reed, Vice-Chancellor, 1897*) ; *Endl. Build. Assoc. § 523; Lewis* v. *Clark, 129 Fed. Rep. 570, 574 (C. C. A. 1904).*

The liability for the immediate payment of the principal sum equitably due is not disputed in this case, and the substantial question is whether, in computing the principal sum due, the amounts which have been paid for premiums on the loan are to be deducted. The decision of the question practically involves a settlement of the relative rights of the borrowing and non-borrowing shareholders on the liquidation of such association, and an equitable solution is attended with difficulty. The subject has been before many courts, and a diversity of opinion has arisen. As to the right to credit for the premium, three different views have been taken. These are well summarized in *Sullivan* v. *Stucky, 86 Fed. Rep. 491 (Baker, District Judge, 1898)*, with a reference to the authorities. The first view is that upon such a termination of the contract the rights of the association and the borrowing shareholders in reference to the loan are to be adjusted solely on the basis of an ordinary debtor and creditor on a loan of money. The borrower, on this view, is charged with the amount of money actually received, with legal interest, and is credited with all payments made, whether by way of dues, interest or premium, according to the rule governing partial payments. This view evidently throws all the loss resulting from the payment of dues on stock on the non-borrowing shareholders. The second view is that the borrowing shareholder is entitled to credit upon his loan for the amount of interest and premium paid, but is not entitled to have the amount of dues paid on stock credited on the loan. This is the view supported by the weight of authority and was the rule followed by Vice-Chancellor Reed in *Weir* v. *Granite State Association, 56 N. J. Eq. (11 Dick.) 234 (1897)*. The basis of it is that the premiums were paid by the borrowers in consideration of the complete execution of the contract of loan, which would allow the debt to be paid by the application of the matured shares, and that the consideration for the premium fails. The dues, however, are not considered as paid in consideration of the loan, but as paid by the borrowers as shareholders merely and, therefore, are not to be credited on the mortgage. The third view, as to the premiums, is one first declared by Judge Grosscup, in *Towle* v. *Society, 61 Fed. Rep. 446 (1894)*. He considered that the

termination of an association of this character by insolvency, a contingency not contemplated or provided for by the association or any of its members, either the borrowers or non-borrowers, was a condition for which all of the shareholders— borrowers and non-borrowers—through their agents, the officers, were alike responsible, and that the adjustment in relation to the premiums should not be made upon a consideration solely of the legal principles controlling the relations of borrower and lender, but upon considerations of equity and fair dealing on the entire relations between the members, free from legal or contract technicalities relating to the form of loan. Each member being thus equally responsible for the termination of the contract of loan, he considered that the adjustment to be made upon this failure should be made as nearly as possible upon the lines of what would have taken place if the association had matured. Taking the estimated period of maturity of the loan, he treated the gross premium which had been paid as earned for a proportionate period and allowed a credit only for the unearned portion. This rule has since been followed in several federal decisions (*MacMurray* v. *Gosney, 106 Fed. Rep. 11 (Acheson, Circuit Judge, 1901*) and others, and was commented on by Vice-Chancellor Reed in the *Weir Case* as having much to recommend it. He concluded, however, after a careful and thorough consideration, that the rule, allowing the reduction of the whole gross premium, was sustained by the weight of authority and upon the whole was the more equitable rule. The decision of Vice-Chancellor Reed was followed by Vice-Chancellor Grey, in *Hoagland* v. *Saul, 53 Atl. Rep. 704 (1902)*, and I regard it as controlling my decision in this case. The decision was not either questioned or overruled by Vice-Chancellor Pitney, in *Whitehead* v. *Commercial Building and Loan Association, 64 N. J. Eq. (19 Dick.) 24 (1902)*. In the latter case, on an application of the receiver for directions, the final decision of the question as to the credit to be allowed to the borrower on the mortgage for either premiums or dues was held open for future decision on the distribution of the assets. If the question were an open one, I should be much inclined to adopt the rule that gross premiums paid or reserved at the time of the

loan should be apportioned, and that the proportionate amount, which could be considered fairly as earned at the time of the cessation of the business, should not be deducted, and that, if paid in installments, as in the present case, the premiums paid before the liquidation should be considered as earned and belonging to the association for the equal benefit of all the shareholders. I think it is taking somewhat too limited a view of the circumstances of the loan to consider that the payment of the debt by the application of matured shares, payable in installments, is to be treated as if it were the sole consideration for the payment of the premium on the loan, and that this method having failed the consideration for the premium has therefore entirely failed. The whole scheme of the association relating to the loans and premiums thereon should be taken into account, I think, as entering into and making part of the consideration of the agreement to pay premium. This would include, as part of this consideration, the amounts usually loaned to members on their shares of property. Under our general laws, loans on mortgages on the property of members may be made up to eighty per cent. of its value, while on that of non-members it is restricted to fifty per cent. on the shares; loans up to ninety per cent. may be made to members. *P. L. of 1903 p. 465.*

Under the general management of these associations the premiums paid by installments are usually considered as earned when paid, and are treated as part of its funds on hand as assets belonging to the association, out of which provision may be made for dividends and for the payment of shares on withdrawal. This method of treating the premiums paid in installments as earned is recognized, I think, as a lawful method by the general law (*P. L. of 1903 p. 476 § 51*), which provides that the gross premiums on loans received by the association are not to be treated as profits wholly earned, but are to be apportioned over a period fairly estimated for the maturity of the shares, and for that period, in decreasing proportion, are to be carried on as an unearned profit. If the premiums are considered as wholly subject to the contingency of the ultimate regular maturity of the shares, then it would seem to be clear that until maturity the entire premium account must be carried as a lia-

bility and cannot be treated to any extent as an asset or profit of the company subject to disposal. This would practically prevent the payment of shares on withdrawal under the provisions of the by-laws generally in force, or under the general law. *P. L. of 1903 p. 471 § 38.* In the present case the by-laws provided, article 12, for two accounts, into which all the receipts should be divided. The first was a *general account,* which consisted of the dues paid in for stock and payments for stock, which amount was available for loans, and the second, called the *profit account,* embraced all other receipts. This *profit account* included the amounts received from interest and premiums, and from this account were paid the expenses of the association and also the amounts due members on withdrawal under the provisions of the by-laws. These withdrawal payments, in the present case, amounted to about $12,000 up to the time of liquidation. In considering the matter of the deduction or credit of the installments of the premium already paid, the *status* or treatment of the premiums under the whole scheme of the association as a going concern up to the time of the failure seems to me to be of importance on the question of the equitable adjustment of the rights of shareholders on a failure of the enterprise, which must be attributed equally to all shareholders, whether borrowers or non-borrowers. These considerations—some of them based on the act of 1903—passed after the decision in the *Weir Case,* would incline me, if the question were an open one, to the view that the premiums are to be apportioned, and that, when paid by installments, as in this case, they are to be treated as earned and are not to be deducted. But the question is admittedly one difficult of satisfactory solution. The rule adopted in the *Weir Case* has been approved by the weight of authority, and I consider it binding and conclusive, and will therefore advise that, in settling the amount due on the mortgage, the premiums be deducted, as claimed by the defendant.