The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 22, 2018

## 2018COA23

**No. 16CA1492, *In re the Marriage of Runge* — Family Law — Civil Procedure — Court Facilitated Management of Domestic Relations Cases — Disclosures — Topical subject keywords**

A division of the court of appeals considers whether wife's motion under C.R.C.P. 16.2(e)(10), filed one day before expiration of the five-year period where the court retains jurisdiction to allocate material assets or liabilities, stated sufficient grounds to trigger discovery and allocation of assets under the rule.  The majority affirms that the district court had jurisdiction to consider wife's motion and concludes that the "plausibility" standard, which was announced in *Warne v. Hall*, 2016 CO 50, does not apply to a motion under C.R.C.P. 16.2(e)(10) and that wife's motion did not state sufficient grounds to trigger an allocation of assets under the rule.  The dissent would vacate the district court's order dismissing

wife's motion on the basis that the district court lost jurisdiction to consider the motion.

COLORADO COURT OF APPEALS        **2018COA23**

Court of Appeals No. 16CA1492
Boulder County District Court No. 10DR1467
Honorable Bruce Langer, Judge

In re the Marriage of

Barbara Runge,

Appellant,

and

David Allen Runge,

Appellee.

ORDER AFFIRMED

Division I
Opinion by JUDGE FURMAN
Richman, J., specially concurs
Taubman, J., dissents

Announced February 22, 2018

Robert E. Lanham, P.C., Robert E. Lanham, Boulder, Colorado, for Appellant

Litvak Litvak Mehrtens and Carlton, P.C., Ronald D. Litvak, John C. Haas, Colorado Springs, Colorado, for Appellee

¶ 1     In this post-dissolution of marriage dispute between Barbara Runge (wife) and David Allen Runge (husband), wife moved under C.R.C.P. 16.2(e)(10) to discover and allocate assets that she alleged husband did not disclose or misrepresented in the proceedings surrounding their 2011 separation agreement.  Husband moved to dismiss wife's motion.  In a written order, the district court granted husband's motion to dismiss, ruling that wife's motion did not state sufficient grounds to trigger discovery and allocation of assets under the rule.

¶ 2     On appeal, wife challenges the district court's order.  She contends that the district court erred by (1) not applying the "plausibility" standard, which was announced in *Warne v. Hall*, 2016 CO 50, when granting husband's motion to dismiss; and (2) ruling that she did not state sufficient grounds in her motion.  She also contends that the court should have at least allowed her to conduct discovery to prove her allegations.

¶ 3     We conclude that the *Warne* "plausibility" standard does not apply to the dismissal of a motion under C.R.C.P. 16.2(e)(10).  We also agree with the district court that wife's motion did not state

1

sufficient grounds to trigger an allocation of assets or discovery under the rule. Accordingly, we affirm the district court's order.

¶ 4    As an initial matter, husband contends that the district court lacked subject matter jurisdiction under C.R.C.P. 16.2(e)(10) because the five-year period during which it may reallocate assets expired the day after wife moved for such relief. We disagree.

¶ 5    C.R.C.P. 16.2(e)(10) establishes a five-year period where the court retains jurisdiction to "allocate" material assets or liabilities that were not allocated as part of the original decree. It does not, however, limit the court's jurisdiction to rule on timely motions if the five-year period expires before the ruling. Therefore, the majority concludes that the district court had jurisdiction to rule on the motion because wife's motion was timely — it was filed within the five-year period under the rule. C.R.C.P. 16.2(e)(10).

¶ 6    Because we affirm the court's dismissal of wife's motion, this opinion does not decide whether the court would have had jurisdiction to allocate assets if it had granted wife's motion. The separate concurring opinion of Judge Richman concludes that the district court retained jurisdiction to both rule on the motion and allocate assets if necessary. The dissent of Judge Taubman

concludes that the district court's jurisdiction to consider the motion was lost as soon as the five-year period expired.

## I. The Separation Agreement

¶ 7    The parties, with assistance of counsel, entered into a separation agreement in 2011 to end their twenty-seven-year marriage.  They requested that the district court find the agreement to be fair and not unconscionable, and incorporate it into the dissolution decree.  The court did so.

¶ 8    Four years and 364 days later, wife moved to reopen the property division provisions of the agreement under C.R.C.P. 16.2(e)(10), contending that husband did not disclose and had misrepresented assets during the dissolution case.

¶ 9    In response, husband moved to dismiss wife's request, arguing that she had not sufficiently alleged facts showing either material omissions or misrepresentations.  He also argued in his reply that the district court lacked subject matter jurisdiction under the rule because the five-year period during which it may reallocate assets expired the day after wife moved for such relief.

¶ 10    The district court rejected husband's jurisdictional argument, but it granted his motion to dismiss, ruling that wife had not made

a sufficient showing under C.R.C.P. 16.2 that husband had failed to provide material information.

## II. C.R.C.P. 16.2

¶ 11    The purpose of C.R.C.P. 16.2 is to provide uniform case management procedures and to reduce the negative impact of adversarial litigation in domestic relations cases. *See* C.R.C.P. 16.2(a); *In re Marriage of Schelp*, 228 P.3d 151, 155, 157 (Colo. 2010); *In re Marriage of Hunt*, 2015 COA 58, ¶ 9. The rule imposes heightened affirmative disclosure requirements for divorcing spouses and allows dissolution courts to reallocate assets in the event that material misstatements or omissions were made by a spouse. *See Schelp*, 228 P.3d at 155; *Hunt*, ¶ 9; *see also* C.R.C.P. 16.2(e).

¶ 12    Regarding disclosure, the rule imposes a special duty of candor on divorcing spouses, which includes "full and honest disclosure of all facts that materially affect their rights and interests." C.R.C.P. 16.2(e)(1); *see Schelp*, 228 P.3d at 156. In discharging this duty, "a party must affirmatively disclose all information that is material to the resolution of the case without awaiting inquiry from the other party." C.R.C.P. 16.2(e)(1); *see*

*Schelp*, 228 P.3d at 156.  The rule requires certain mandatory financial disclosures, which are specified in the appendix to the rule, and a sworn financial statement with supporting schedules. *See* C.R.C.P. 16.2(e)(2) & app. form 35.1; *Hunt*, ¶¶ 13-15.  It further imposes a general duty on the parties "to provide full disclosure of all material assets and liabilities."  C.R.C.P. 16.2(e)(10); *see Hunt*, ¶ 17.

¶ 13     And, as relevant here, C.R.C.P. 16.2(e)(10) provides that,

> [i]f the disclosure contains misstatements or omissions, the court shall retain jurisdiction after the entry of a final decree or judgment for a period of 5 years to allocate material assets or liabilities, the omission or non-disclosure of which materially affects the division of assets and liabilities.

*See Schelp*, 228 P.3d at 156; *Hunt*, ¶ 17.

### III.  *Warne* Plausibility Standard

¶ 14     We first address wife's contention that the district court erred by not applying the "plausibility" standard, which was announced in *Warne v. Hall*, 2016 CO 50, when granting husband's motion to dismiss.  We conclude that the *Warne* plausibility standard governing motions to dismiss under C.R.C.P. 12(b)(5) does not apply to wife's motion under C.R.C.P. 16.2.

¶ 15    We review de novo whether the district court applied the correct standard in dismissing wife's motion.  *See Ledroit Law v. Kim,* 2015 COA 114, ¶ 47.

¶ 16    Under the "plausibility" standard from *Warne,* a complaint must "state a claim for relief that is plausible on its face" to avoid dismissal under C.R.C.P. 12(b)(5) for failure to state a claim. *Warne,* ¶¶ 1, 5 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2007)). But, we conclude that C.R.C.P. 12(b)(5) does not apply here, and, thus, neither does the *Warne* standard.  We reach this conclusion for two reasons.

¶ 17    First, husband did not cite C.R.C.P. 12(b)(5) as authority for his motion to dismiss, nor did the parties argue a C.R.C.P. 12(b)(5) standard to the district court.

¶ 18    Second, by its express terms, C.R.C.P. 12(b)(5) applies to a defense "to a claim for relief in any *pleading*" when that defense asserts a "failure to state a claim upon which relief can be granted." (Emphasis added.)  "A motion is not a pleading." *People v. Anderson,* 828 P.2d 228, 231 (Colo. 1992) (quoting *Capitol Indus. Bank v. Strain,* 166 Colo. 55, 58, 442 P.2d 187, 188 (1968)).

¶ 19    Indeed, C.R.C.P. 7(a) identifies the pleadings in an action as the complaint and answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint and answer, and a reply to an affirmative defense. *See In re Estate of Jones*, 704 P.2d 845, 847 (Colo. 1985) (defining pleadings as "the formal allegations by the parties of their respective claims and defenses"). The rule distinguishes a pleading from a motion, defining a motion as an "application to the court for an order." C.R.C.P. 7(a), (b)(1); *see Winterhawk Outfitters, Inc. v. Office of Outfitters Registration*, 43 P.3d 745, 747-48 (Colo. App. 2002) (distinguishing under C.R.C.P. 7 a "motion," meaning a written or oral request for the court to make a particular ruling or order, from a "pleading," which includes the complaint, answer, and reply in a case); *see also* § 14-10-105(1), (3), C.R.S. 2017 (Colorado rules of civil procedure apply to dissolution proceedings and the pleadings in such cases shall be denominated as provided in those rules except that the initial pleading shall be denominated a petition and the responsive pleading shall be denominated a response); *cf. In re Marriage of Plank*, 881 P.2d 486, 487 (Colo. App. 1994) (noting that pleadings in a dissolution case include the petition and response and,

therefore, spouse's post-dissolution motion for writ of garnishment was not a new "action" but rather a motion ancillary to the original dissolution action).

¶ 20   Accordingly, because wife's motion was not a pleading and husband's motion to dismiss was not pursuant to C.R.C.P. 12(b)(5), we conclude that the district court did not err by not applying the *Warne* standard.

## IV.  Wife's Allegations

¶ 21   We next address whether wife stated sufficient grounds in her motion to trigger an allocation of undisclosed or misstated assets under C.R.C.P. 16.2(e)(10).  We conclude that she did not.  Thus, we also conclude that further proceedings were not required.

¶ 22   We review de novo the district court's interpretation of C.R.C.P. 16.2 in determining the sufficiency of wife's allegations. *See Hunt*, ¶ 10.

¶ 23   Wife contends that husband omitted certain business entities and interests from his sworn financial statements and the separation agreement.  She also contends that he misrepresented (1) the value of his primary business interest, Tax Law Solutions, by stating that the value was "unknown"; and (2) the amount of

8

mortgage debt on the marital residence, which he asserted was $1.4 million.

¶ 24     But, the record reflects that before the parties entered into the separation agreement, husband advanced funds for wife to hire an accounting expert to investigate their financial circumstances; he gave the accountant and wife, through her attorney, voluminous documents, including personal and business bank statements, trust documents, records concerning his offshore interests, and his own accounting expert's report; and he and his expert testified and were cross-examined at length at the temporary orders hearing.

¶ 25     Nothing in C.R.C.P. 16.2(e) limits a court's consideration of the parties' sworn financial statements or their separation agreement when determining the adequacy of financial disclosures. To the contrary, the rule requires specific financial disclosures, with which husband certified compliance, and imposes a general duty to disclose "all facts that materially affect" the parties' rights and interests and "all material assets and liabilities." C.R.C.P. 16.2(e)(1)-(2), (10). Hence, as the district court did, we consider all forms of husband's pre-decree disclosure, including his retaining accounting experts, the documentation provided to wife and her

9

expert, and the information testified to at the 2011 temporary orders hearing.

¶ 26    In doing so, we conclude that *Hunt*, on which wife relies, is materially distinguishable from the present case.  In *Hunt*, it was undisputed that the husband had failed to disclose certain specific items that are listed for mandatory disclosure in the appendix to C.R.C.P. 16.2 — three years of personal and business financial statements, loan applications and agreements, and appraisals — before the parties entered into their memorandum of understanding (MOU) to resolve their dissolution case.  *See Hunt*, ¶¶ 13-15; *see also* C.R.C.P. 16.2(e)(2) & app. form 35.1.  A division of this court held that because the husband admittedly did not disclose the required items, the district court had erred in not granting the wife's C.R.C.P. 16.2(e)(10) motion to reopen the MOU's property division.  *Hunt*, ¶¶ 15-18.  But, the division further noted that but for the husband having violated the disclosure requirements of the rule, the wife "would have been bound by her decision to enter into the MOU, acknowledging the uncertain value" of his business interest.  *Id.* at ¶ 19; *see also id.* at ¶¶ 31-36 (Jones, J., specially concurring) (emphasizing the narrowness of *Hunt*'s holding).

¶ 27 Wife does not allege that husband failed to disclose any specific item mandated under the rule, and husband certified, as the rule requires, that he had provided all such items. *See* C.R.C.P. 16.2(e)(2), (7). Instead, as the district court noted, wife asserts her suspicions and speculations that husband "likely" failed to disclose and misrepresented material assets. For example, she argues in her opening brief that "[i]t is at least plausible, if not very likely, that Husband failed to provide . . . information that would presumably have given [her] the opportunity to make a more informed decision" when entering into the separation agreement. And, she describes the affidavits she obtained from husband's colleagues as "rais[ing] significant concerns" regarding his "assets and business practices." Such vague assertions are not sufficient to trigger an allocation of omitted or misstated assets under C.R.C.P. 16.2(e)(10) in light of the information wife had pre-decree.

¶ 28 For example, at the February 14, 2011, temporary orders hearing, wife's attorney admitted while cross-examining husband that they had received "an awful lot of documents" from him, as had their accounting expert. Wife further described two boxes of

11

documents that had been produced at a meeting at husband's accounting expert's office with wife and her expert.

¶ 29     And, at the same 2011 hearing, wife's attorney acknowledged in opening statement that the parties' dissolution case was going to be complicated because there were between thirty and fifty entities that husband owns or in which he has an interest.  The attorney further stated that he planned to schedule "a couple of depositions" in order to "look into [husband's offshore] trust in much greater detail," acknowledging that "I do have copies" of the trust documents.  The attorney also stated, looking at husband's exhibit showing that Tax Law Solutions generated over $2 million in revenue in 2009 and $1.6 to $1.8 million in 2010, "[t]hat [it] is going to take a lot of time to value."  He also noted that the exhibit listed fifty-six other entities to which husband had some connection, that this was "not a simple case," and that the case was "going to take a lot of time."

¶ 30     Yet, with the extensive documentation husband provided in hand and armed with her own accounting expert to analyze that extensive documentation, wife nonetheless chose to enter into the separation agreement only a month after the temporary orders

hearing. She presumably did not wait to (1) value Tax Law Solutions as her attorney intended to do; (2) allow her expert to review husband's trust documents, which her attorney confirmed they received; or (3) investigate husband's other business entities or interests, including those offshore, which they knew existed and concerning which husband testified they had documents. She chose instead to sign the separation agreement that allocated the marital residence debt free plus $1,100,000 in cash to her and allocated all of husband's business interests to him.

¶ 31  We acknowledge that C.R.C.P. 16.2(e)(1)-(2) does not impose a duty on wife to conduct discovery to obtain required financial information from husband. *See Schelp*, 228 P.3d at 156; *Hunt*, ¶ 14. But, wife's own attorney stated at the hearing that a lot of documentation had been produced; that he planned to look into that information in greater detail, conduct discovery, and obtain a valuation of husband's primary business interest; and that the case was complicated and was going to take a lot of time to litigate. Nonetheless, wife instead chose to enter into the separation agreement shortly thereafter. We do not interpret C.R.C.P.

13

16.2(e)(10) as permitting a reallocation of assets under these circumstances.

¶ 32     Essentially, in her "motion regarding undisclosed assets," wife requested to conduct the discovery into and analysis of husband's financial and business interests that her attorney had planned to do and the analysis that could have been done by her attorney and accounting expert in 2011 before the separation agreement was signed.  We agree with the district court that C.R.C.P. 16.2(e)(10) was not intended to create a right for an ex-spouse to conduct discovery into the other spouse's assets post-decree.  Nothing in the plain language of the rule indicates such a result, which would contravene established public policy in family law cases.  *See Mockelmann v. Mockelmann,* 121 P.3d 337, 340 (Colo. App. 2005) (noting that allowing divorced parties "to perpetuate disputes long after the entry of permanent orders" is "counter to the strong public policy favoring the finality of judgments" in family law actions).  Nor does the rule permit a spouse to revalue assets that were disclosed pre-decree.  *See Hunt,* ¶ 19.

¶ 33     We must interpret the rules of civil procedure consistent with principles of statutory construction, according to the plain and

ordinary meanings of the words used.  *See* § 2-4-101, C.R.S. 2017; *Hiner v. Johnson*, 2012 COA 164, ¶ 13.  Hence, we may not "judicially legislate" by reading the rule "to accomplish something the plain language does not suggest, warrant or mandate." *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994).

¶ 34     The remedy created by the C.R.C.P. 16.2(e)(10) is extraordinary and also very narrow.  Under the rule, the court retains jurisdiction for a period of five years after a dissolution decree is entered "to allocate material assets or liabilities, the omission or non-disclosure of which materially affects the division of assets and liabilities."  C.R.C.P. 16.2(e)(10).  The rule says nothing about "reopening" a case for the purpose of allowing discovery, as wife requested in her motion.  Thus, in our view, neither the language of the rule nor *Hunt* rescues wife from the consequences of her own decision to settle her dissolution case without fully evaluating the information that husband had provided to her pre-decree.

¶ 35     We are not persuaded by wife's arguments that husband's pre-decree disclosures of the value of Tax Law Solutions as "unknown" and of $1.4 million in mortgage debt on the marital

15

home were misleading. Regarding the value of Tax Law Solutions, the rule requires disclosure of material "facts," "information," and "assets and liabilities." *See* C.R.C.P. 16.2(e)(1), (10). It does not mandate that husband provide his opinion of the value of a disclosed asset. *See Shirley v. Merritt*, 147 Colo. 301, 307, 364 P.2d 192, 196 (1961) ("Value is, of course, a matter of opinion and not of fact . . . .").

¶ 36    Again, the present situation is unlike that in *Hunt*, where the spouse had failed to disclose existing *pre-decree* appraisals of his business and loan applications stating a value for his interest in the business. *See Hunt*, ¶¶ 12-15. Wife instead merely speculates here that husband "likely" misrepresented the value of Tax Law Solutions because an appraisal done two years *after* the decree indicated that the business was worth nearly $5 million.

¶ 37    C.R.C.P. 16.2 addresses pre-decree disclosures, omissions, and misrepresentations. Obviously, husband could not have disclosed or omitted a valuation opinion that did not exist pre-decree. Nor could he have misrepresented value based on such an opinion. A 2013 valuation is not relevant to determining the value of Tax Law Solutions for purposes of the 2011 dissolution. *See* §

16

14-10-113(5), C.R.S. 2017 (property shall be valued for purposes of disposition on dissolution at the time of the decree or the hearing on disposition, whichever is earlier); *see also In re Marriage of Nevarez*, 170 P.3d 808, 813 (Colo. App. 2007).

¶ 38     And, wife knew that the 2011 value of Tax Law Solutions was presented as "unknown" when she signed the separation agreement.  At the temporary orders hearing just one month earlier, wife's own attorney had emphasized on the record the need to value that particular asset and the time it would take to do so.  Thus, unlike the spouse in *Hunt*, wife *is* bound by her decision to enter into the separation agreement without ever obtaining a pre-decree valuation for husband's primary business.  *See Hunt,* ¶ 19.

¶ 39     Regarding the mortgage on the marital home, the record reflects that wife was well aware before entering into the separation agreement that this mortgage was not an arm's length transaction because husband had an ownership interest in the mortgage company, Meridian Trust.  Wife testified at the 2011 hearing that husband had told her that they "needed a mortgage deduction" so he had set up a trust to loan money to them.  She described the mortgage as "not a real mortgage" because husband effectively

17

makes the payments to himself. The circumstances of this mortgage were not undisclosed or misrepresented. Rather, according to wife's own testimony, husband told her about them. Thus, wife's allegations regarding these circumstances are not sufficient to trigger the undisclosed asset allocation remedy under C.R.C.P. 16.2(e)(10).

## V.  Conclusion

¶ 40    The district court correctly determined that wife did not allege a sufficient basis for it to allocate misstated or omitted assets under C.R.C.P. 16.2(e)(10). The rule was not intended to protect a party from choosing, perhaps unwisely, to settle a dissolution case after acknowledging the complexity of and before fully evaluating the information provided by the other party. Nor does it provide for post-decree discovery into an ex-spouse's assets. We will not extend the plain language of the rule or the disposition in *Hunt* to permit such discovery or to compel an allocation of assets under the circumstances here.

¶ 41    The order is affirmed.

JUDGE RICHMAN specially concurs.

JUDGE TAUBMAN dissents.

18

JUDGE RICHMAN, specially concurring.

¶ 42    I concur with Judge Furman that wife's request to reopen the dissolution proceeding was correctly denied by the court. However, unlike Judge Furman, I believe we must consider husband's argument that the court lost subject matter jurisdiction under C.R.C.P. 16.2(e)(10). *See In re Estate of Hossack*, 2013 COA 64, ¶ 11 (if a court lacks subject matter jurisdiction, any judgment it renders is void). Because I disagree with husband's position that the court lost jurisdiction to consider wife's motion five years after the date of the decree, I conclude that the order is valid and vote to affirm the district court's order.

¶ 43    As noted by Judge Furman, wife filed her request to reopen four years and 364 days after the permanent orders were entered. Husband contends that the court lost jurisdiction when five years passed — the day after the motion was filed.

¶ 44    Husband's argument relies on the particular language of the retention provision, specifically that "the court shall retain jurisdiction" for a five-year period after the decree. C.R.C.P. 16.2(e)(10). According to husband, under the plain language of the provision, the court's jurisdiction to reallocate assets immediately

19

ended when this five-year period expired, regardless of wife's pending motion at the time. He argues that had the supreme court intended jurisdiction to extend beyond five years upon the filing of a motion within that period, it would have so stated, as other statutes of limitation do. *See, e.g.*, §§ 13-80-101(1), -102(1), C.R.S. 2017 (providing that certain types of civil actions must "be commenced within" the particular limitations period). I am not persuaded.

¶ 45    We review de novo the legal issue of whether the district court had subject matter jurisdiction to consider wife's motion. *See Egelhoff v. Taylor*, 2013 COA 137, ¶ 23.

¶ 46    "A court's acquisition of subject matter jurisdiction depends on the facts existing at the time jurisdiction is invoked, and a court ordinarily does not lose jurisdiction by the occurrence of subsequent events, even if those events would have prevented acquiring jurisdiction in the first place." *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1081 (Colo. 2011); *see Secrest v. Simonet*, 708 P.2d 803, 807 (Colo. 1985) (jurisdiction once acquired over a defendant was not then lost after he was removed from the territory). *But cf. People in Interest of M.C.S.*, 2014 COA 46, ¶¶ 14-17 (holding that because juvenile court jurisdiction is limited by

statute — both at the time a dependency and neglect petition is filed *and* at the time a child is adjudicated — to children under the age of eighteen, the court lost its jurisdiction to adjudicate when the child turned eighteen after the petition was filed but before adjudication).

¶ 47    The district court's jurisdiction to reallocate the parties' assets under C.R.C.P. 16.2(e)(10) was properly invoked when wife moved for that relief within five years from the date of the decree.  And, having been properly invoked, the court's jurisdiction was not then lost when the court did not rule on the motion until after the five-year period had expired.  *See Secrest,* 708 P.2d at 807; *cf. Nickerson v. State,* 178 So. 3d 538, 538-39 (Fla. Dist. Ct. App. 2015) (finding subject matter jurisdiction to order restitution under similarly worded Florida statute — providing that a court retains jurisdiction for purposes of ordering restitution for up to five years from a defendant's release — when the court's jurisdiction was invoked within the five-year period even though it did not act within that period).

¶ 48    In support of this conclusion, I note that in *Schelp,* the supreme court commented that the jurisdiction retention provision

supplanted the application of "C.R.C.P. 60(b)'s six-month window, which formerly operated as a bar for such retained jurisdiction." *In re Marriage of Schelp*, 228 P.3d 151, 156 (Colo. 2010). C.R.C.P. 60(b) expressly sets a period of 182 days from the date of the filing of the motion, and does not require a decision on the motion within six months as husband argues.

¶ 49 Husband's proposed interpretation of C.R.C.P. 16.2(e)(10) would produce uncertain and absurd results and frustrate the rule's stated purpose to create uniformity in domestic relations cases. *See* C.R.C.P. 16.2(a). Under his interpretation, the deadline for a party to move for relief under the rule would be uncertain and would necessarily depend on the state of the docket in the particular jurisdiction. It would be impossible for a party to predict when a realistic filing deadline for such a motion might be. I would not adopt such an interpretation. *See* § 2-4-201(1)(c), C.R.S. 2017 (statute is presumed to intend a just and reasonable result); *In re Marriage of Hunt*, 2015 COA 58, ¶¶ 22-23 (refusing to interpret C.R.C.P. 16.2 in a manner requiring an absurd or unreasonable result or frustrating one of its stated goals); *see also Schwankl v. Davis*, 85 P.3d 512, 516-17 (Colo. 2004).

¶ 50    Finally, I question the efficacy of the suggestion in Judge Taubman's dissent that a nunc pro tunc order could be employed in a case where the district court was not given sufficient time to address a motion to reopen.  In *Dill v. County Court*, 37 Colo. App. 75, 77, 541 P.2d 1272, 1273 (1975), a division of the court of appeals concluded that a nunc pro tunc judgment may not be used "to circumvent the time requirements of the rules of procedure" and resurrect an appeal that was untimely filed.  In *Mark v. Mark*, 697 P.2d 799, 801 (Colo. App. 1985), *overruled by Robbins v. A.B. Goldberg*, 185 P.3d 794 (Colo. 2008), our court cited *Dill* for the proposition that "a trial court may not regain jurisdiction, once it has been lost, by purporting to act in the past" through a nunc pro tunc judgment.

¶ 51    Although *Goldberg*, the case cited by Judge Taubman to support the use of a nunc pro tunc judgment, overruled *Mark*, it did not address *Dill*.  And in *People v. Sherrod*, 204 P.3d 466, 469 (Colo. 2009), the supreme court cited *Dill* in discussing "whether nunc pro tunc orders can cure jurisdictional defects," but ultimately did not decide that question.

23

¶ 52    I thus question whether use of a nunc pro tunc judgment could would allow a district court to decide a motion to reopen after the five-year jurisdictional period has run, as suggested by Judge Taubman.

JUDGE TAUBMAN, dissenting.

¶ 53    In my view, the threshold — and dispositive — question in this case is whether the trial court had subject matter jurisdiction under C.R.C.P. 16.2(e)(10) to consider the motion of Barbara Runge (wife) to reopen the marital property division entered four years and 364 days earlier in her dissolution of marriage action.  Because I believe that rule provides the trial court with subject matter jurisdiction to consider such motions for up to five years from the date of permanent orders, I disagree with Judge Furman and Judge Richman rejecting the argument of David Allen Runge (husband) that the trial court had lost subject matter jurisdiction to consider wife's motion.  I also disagree with Judge Richman's conclusion that the trial court had jurisdiction to rule on wife's motion.

¶ 54    Barbara and David Allen Runge divorced in 2011.  The decree of dissolution was entered on April 22, 2011.  One day shy of five years later, on April 21, 2016, wife filed a motion to reopen the property portions of the dissolution decree under C.R.C.P. 16.2(e)(10).  In her motion, wife made general allegations that husband had either hidden or undervalued assets.  The record provides no explanation for wife's decision to file her motion one day

25

shy of the five-year jurisdictional provision of that rule. The district court ruled that it had jurisdiction to consider wife's motion, but ultimately dismissed her motion after concluding that wife "ha[d] not made a sufficient showing" that husband failed to provide material financial information.

¶ 55    "[S]ubject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment in that class." *Minto v. Lambert*, 870 P.2d 572, 575 (Colo. App. 1993). "Whether a court possesses . . . jurisdiction is generally only dependent on the nature of the claim and the relief sought." *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 58 P.3d 47, 50 (Colo. 2002). "[I]n determining whether a court has subject matter jurisdiction, it is important to distinguish between cases in which a court is devoid of power and those in which a court may have inappropriately exercised its power." *SR Condos., LLC v. K.C. Constr., Inc.*, 176 P.3d 866, 869-70 (Colo. App. 2007). If a court acted when it was devoid of power, it acted without jurisdiction and any judgment rendered is void. *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo. 1981).

¶ 56    Rule 16.2(e)(10) requires that, at the outset of a dissolution of marriage action, the parties must "provide full disclosure of all material assets and liabilities."  If such financial disclosures contain "misstatements or omissions, the court shall retain jurisdiction after the entry of a final decree or judgment for a period of 5 years to allocate material assets or liabilities, the omission or non-disclosure of which materially affects the division of assets and liabilities."

¶ 57    Rule 16.2 was promulgated in 2005 in an effort to reform the "procedure for the resolution of all issues in domestic relations cases."  C.R.C.P. 16.2(a); *see also In re Marriage of Schelp*, 228 P.3d 151, 155 (Colo. 2010).  Rule 16.2 sets forth comprehensive disclosure and discovery requirements and allows for tailored case management.  *See generally* C.R.C.P. 16.2(a).  The rule was "the culmination of five years of pilot projects statewide and two years of drafting by a subcommittee of the Supreme Court Standing Committee on Family Issues."  David M. Johnson et al., *New Rule 16.2: A Brave New World*, 34 Colo. Law. 101, 101 (Jan. 2005).  It was drafted with significant input from "the Bench and Bar."  *Id.*

¶ 58    As Judge Richman notes, the *Schelp* court stated that Rule 16.2(e)(10) "renders inactive" C.R.C.P. 60(b), "which formerly operated as a bar" to retained jurisdiction by requiring that parties in most circumstances file a post-decree challenge within six months. *Schelp*, 228 P.3d at 156. Thus, Rule 16.2(e)(10) supplanted Rule 60(b) in the context of post-decree challenges based on nondisclosure of material assets or liabilities. *See id.* Significantly, Rule 60(b) set a *filing* deadline whereas Rule 16.2(e)(10) states that the court "shall retain jurisdiction" for five years after the entry of a final decree or judgment. *Compare* C.R.C.P. 60(b), *with* C.R.C.P. 16.2(e)(10).

¶ 59    On appeal, husband asserts that Rule 16.2(e)(10) strips a court of jurisdiction to consider a post-decree challenge based on financial nondisclosure five years after the date of the decree. That is, husband contends the rule imposes a limit on a district court's jurisdiction. In response, wife contends that the rule imposes a mere filing deadline, and does not require the court to act within the five-year window. In other words, wife views the rule as a claims processing provision. I agree with husband's reading of Rule

28

16.2(e)(10) and would therefore conclude that the district court lost jurisdiction to consider wife's motion the day after she filed it.

¶ 60     Rules of statutory construction apply to the interpretation of rules of civil procedure. *Watson v. Fenney*, 800 P.2d 1373, 1375 (Colo. App. 1990). Thus, the primary task in construing a rule is to ascertain and to give effect to the intent of the adopting body. *Id.* To discern that intent, a court should look first to the language of the rule, giving words and phrases their plain and ordinary meanings. *See People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986). If the language of a rule is clear, there is no need to resort to other rules of construction. *Watson*, 800 P.2d at 1375.

¶ 61     I consider the meaning of Rule 16.2(e)(10) plain: a district court retains *jurisdiction* to reopen a dissolution decree for five years after the decree's entry. Once five years have passed since the date of permanent orders, the court loses jurisdiction under Rule 16.2(e)(10) to consider a motion to reopen a property division in a dissolution of marriage case. No Colorado case law contradicts this reading of the rule, and in fact some cases support my interpretation. *See generally Schelp*, 228 P.3d at 156 ("The five-year retention provision states that for any disclosures made under the

29

new [Rule 16.2], the court shall retain *jurisdiction* for a period of five years after the entry a decree to reallocate assets and liabilities.") (emphasis added).

¶ 62     Although Judge Furman appears to apply a plain meaning interpretation of Rule 16.2(e)(10), I disagree with his construction of the rule.  In his interpretation, a trial court may consider a motion to reallocate marital assets or liabilities whenever it is filed, but only retains jurisdiction for five years from the date of permanent orders if it intends to grant the motion.  This novel interpretation was not argued by the parties or addressed by the trial court.  Further, I am not aware of any decision considering a trial court's subject matter jurisdiction which has held that a jurisdictional limit applies to the granting of a motion, but not to its denial.

¶ 63     I have three concerns about Judge Furman's interpretation. First, it does not alert litigants that the five-year period in Rule 16.2(e)(10) applies only when a court intends to grant a motion to reallocate marital assets and liabilities.  Second, it does not account for other language in this rule that the five-year provision does not limit other remedies that may be available to a party.  Thus, a litigant filing a motion to reallocate marital assets more than five

years after the date of permanent orders would not know whether to pursue such motion under Rule 16.2(e)(10) or pursue some other remedy. Indeed, my guess is that after the five-year period has elapsed, a litigant would never file a motion under this rule.

¶ 64 Third, Judge Furman's construction of Rule 16.2(e)(10) rests on the assumption that a trial court will be able to decide a motion under that rule without affording the moving party an opportunity to conduct discovery. Here, wife moved for discovery to assist her in proving the allegations contained in her motion. In this case, as in many others, discovery may be necessary to establish whether an initial disclosure of assets and liabilities contained material misstatements or omissions. While a trial court may be able to rule in some cases that a motion to reallocate assets and liabilities is insufficient on its face, in my view most cases will require that some discovery be undertaken.

¶ 65 While Judge Richman concludes that the district court had jurisdiction because wife filed her motion within five years of the date of the decree, I disagree with that interpretation as well, for several reasons. First, as I have already noted, the plain language of Rule 16.2(e)(10) is phrased in terms of the district court's

31

jurisdiction and makes no mention of a date by which a party must file a motion to reopen. I would give effect to the rule's plain language.

¶ 66    Second, when we consider the meaning of rules, "inclusion of certain items implies the exclusion of others." *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001). I would conclude that the express inclusion of the word "jurisdiction" in Rule 16.2(e)(10) implies that the supreme court rejected phrasing the rule as imposing a filing deadline. In contrast, other procedural rules require that a party file a motion within a certain window. *See* C.A.R. 4(a) (requiring that parties file notice of appeal "within 49 days of the date of the entry of the judgment, decree, or order from which the party appeals"); C.R.C.P. 59(a) ("Within 14 days of entry of judgment as provided in C.R.C.P. 58 or such greater time as the court may allow, a party may move for post-trial relief."); C.R.C.P. 60(b) (requiring that motion for relief from a judgment or order "shall be made within a reasonable time, and for [certain enumerated claims] not more than 182 days after the judgment, order, or proceeding was entered or taken"); *see also* §§ 13-80-101(1), -102(1), C.R.S. 2017 (requiring that civil actions be "commenced within" certain statutes

32

of limitations periods); *cf. In re Fisher*, 202 P.3d 1186, 1198 (Colo. 2009) (concluding that C.R.C.P. 251.19(a), which requires that attorney discipline hearing board "shall prepare" an opinion within fifty-six days of a hearing, does not state that the board "loses jurisdiction to rule on a matter if the opinion is not issued within" that timeframe). Thus, where the Colorado Supreme Court has intended to create a filing deadline, it has done so. It did not do so here.

¶ 67    Third, I believe that reading Rule 16.2(e)(10) as creating a five-year jurisdictional window is in keeping with the intent of revised Rule 16.2 as a whole. *See Dist. Court*, 713 P.2d at 921 ("To reasonably effectuate the legislative intent, a statute must be read and considered as a whole."). In light of the rule's rigorous mandatory disclosure scheme, *see generally* C.R.C.P. 16.2(e); *see also* C.R.C.P. 16.2 app. form 35.1, I believe that the supreme court envisioned less frequent post-decree challenges to property divisions in permanent orders. Thus, a five-year cap on a district court's jurisdiction to reopen decrees strikes me as a sensible limitation, as well as a significant expansion of the prior limitations of Rule 60(b).

¶ 68　　Fourth, I do not think that my interpretation of Rule 16.2(e)(10) would lead to the "uncertain and absurd results" that Judge Richman envisions. He concludes that, if the rule's plain meaning were given effect, parties would be forced to predict an appropriate date to file a motion to reopen based on a district court's ability to decide such motion within the five-year jurisdictional period. However, I do not believe reading Rule 16.2(e)(10) as imposing a jurisdictional limit would engender such uncertainty.[1] In the event that parties discover grounds for reopening a decree when the five-year window has almost run, they can file motions requesting a district court to decide the matter during the five-year period it retains jurisdiction.

¶ 69　　Moreover, in my view, the supreme court has set forth an appropriate remedy for situations in which a district court does not decide a matter within the jurisdictional window despite being given sufficient time to do so. In *Robbins v. A.B. Goldberg*, the supreme

---

[1] On the contrary, Rule 16.2(e)(10) should encourage parties to file motions to reopen a property division sufficiently in advance of the jurisdictional deadline to permit the district court to timely rule. Further, as in *Robbins v. A.B. Goldberg*, 185 P.3d 794 (Colo. 2008), the parties can advise the court as necessary of the impending jurisdictional deadline.

court stated that C.R.C.P. 54(h)'s requirement that "[a] revived judgment must be entered within twenty years after entry of the original judgment" "was not intended to deprive litigants of a judgment simply because of court delays." 185 P.3d 794, 795-96 (Colo. 2008). Thus, the *Robbins* court held that, if court delay caused the court to lose jurisdiction, the appropriate remedy was an entry of judgment nunc pro tunc as of a date within Rule 54(h)'s twenty-year window. *Id.* at 797; *see also Perdew v. Perdew*, 99 Colo. 544, 547, 64 P.2d 602, 604 (1937) (providing that a judgment nunc pro tunc may be entered "where the cause was ripe for judgment and one could have been entered at the date to which it is to relate back, provided [any] failure is not the fault of the moving party").

¶ 70 Rule 16.2(e)(10) does "not limit other remedies that may be available to a party by law." Thus, in the event a party files a motion under Rule 16.2(e)(10) but "court congestion or other administrative delays prevent a court from considering [the] matter before [the] legal deadline," a judgment nunc pro tunc as of a date

within the five-year window would be appropriate.[2]  *Robbins*, 185

P.3d at 796.  However, that remedy is not appropriate here, where

wife does not offer any reason for filing her motion only one day

before the jurisdictional deadline and where wife did not alert the

court to its imminent loss of jurisdiction.

¶ 71      Finally, I disagree with wife's contention, made during oral

argument, that the use of the term "jurisdiction" in Rule 16.2(e)(10)

was "an example of poor drafting" by the Supreme Court Civil Rules

Committee.  As I have stated, I find the meaning of the rule plain,

and the extensive drafting process that led to its enactment

suggests that some forethought led to the use of the word

"jurisdiction" in Rule 16.2(e)(10).  *See generally* Johnson et al., 34

Colo. Law. at 101.  Even if interpreting Rule 16.2(e)(10) according to

---

[2] Although absence of jurisdiction typically acts as an absolute
restriction on a court's power to hear a matter, there are exceptions
to that seemingly hard and fast rule.  Exhaustion of administrative
remedies is a jurisdictional prerequisite to bringing a suit
challenging an administrative action, but there are several
exceptions to that jurisdictional bar.  *City & Cty. of Denver v. United
Air Lines, Inc.*, 8 P.3d 1206, 1213 & n.11 (Colo. 2000) (summarizing
exceptions, including futility and waiver by the agency).  Similarly,
timely filing of a notice of appeal is ordinarily a jurisdictional
prerequisite to appellate review, but certain exceptions allow for
appellate review even in the case of untimely filing.  *See generally In
re C.A.B.L.*, 221 P.3d 433, 438-40 (Colo. App. 2009).

its plain meaning would lead to a result not intended by the supreme court, "we are not a board of editors" tasked with rewriting the Rules of Civil Procedure when their meaning is clear. *McGihon v. Cave*, 2016 COA 78, ¶ 11, ___ P.3d ___, ___.

¶ 72    Accordingly, I would vacate the district court's order dismissing wife's motion on the basis that the district court lacked jurisdiction to consider the motion. Because I would vacate the order rather than affirm on the merits, I respectfully dissent.