Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 27, 2020

**2020 CO 7**

**No. 18SC772, *In Re Marriage of Durie*— Post-Decree Motion to Allocate Assets and Liabilities Under C.R.C.P. 16.2(e)(10)—Particularity—Allegations Based on Information and Belief—Burden of Proof—Entitlement to Discovery—District Court's Discretion.**

In this domestic relations case, the supreme court considers the standards and procedures that govern a C.R.C.P. 16.2(e)(10) post-decree motion to allocate material assets or liabilities allegedly misstated or omitted in pre-decree disclosures.

The court holds that C.R.C.P. 12(b)(5) and the plausibility standard in *Warne v. Hall*, 2016 CO 50, 373 P.3d 588, do not apply to Rule 16.2(e)(10) motions. Rule 12(b)(5) and the plausibility standard apply to motions to dismiss a claim for relief in a pleading, and a Rule 16.2(e)(10) motion is not a pleading.  Instead, the court holds that, consistent with C.R.C.P. 7(b), which controls motions practice in civil cases, a Rule 16.2(e)(10) motion must "state with particularity" the grounds on which it is premised (i.e., the reasons why relief is warranted).  But the court

holds that this does not preclude allegations that are based on information and belief when the moving party lacks direct knowledge about those allegations. So long as the motion satisfies the particularity requirement in Rule 7(b)(1), it may include such allegations. Lastly, the court holds that a party is not automatically entitled to conduct discovery to support her Rule 16.2(e)(10) motion. Rather, the district court, in its discretion, may allow discovery or schedule a hearing (or both) if it concludes that the facts asserted in the motion are sufficient to justify doing so. In making this determination, the district court should be mindful that the moving party must satisfy Rule 7(b)(1)'s particularity requirement and ultimately bears the burden of demonstrating by a preponderance of the evidence that she is entitled to relief. In the event the district court finds that the facts asserted in the motion are not sufficient to justify a hearing or even discovery, it may deny the motion outright.

**2020 CO 7**

**Supreme Court Case No. 18SC772**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1295

**In re the Marriage of**

**Petitioner:**

Steven R. Durie,

and

**Respondent:**

Kelly J. Durie n/k/a Kelly J. Simmerman.

**Judgment Affirmed**
*en banc*
January 27, 2020

**Attorneys for Petitioner:**
Epstein Patierno, LLP
Steven B. Epstein
Courtney J. Leathers Allen
Wendy J. Smock
John H. Tatlock
        *Denver, Colorado*

**Attorneys for Respondent:**
Stevens, Littman, Biddison, Tharp & Weinberg LLC
Craig A. Weinberg
        *Boulder, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 Although adversarial in nature, domestic relations cases involve parties who are family members and have "a special relationship to one another and to the court system." C.R.C.P. 16.2(a). In these unique cases, the law imposes a "duty of candor." C.R.C.P. 16.2(e)(1). In accord with this duty, the parties must make "full and honest disclosure[s] of all facts that materially affect their rights and interests." *Id.* The required disclosures include each party's material assets and liabilities. C.R.C.P. 16.2(e)(10). Following entry of a final decree, if a party discovers that the other party's disclosures contained misstatements or omissions, she may seek relief pursuant to Rule 16.2(e)(10). *Id.* Under that rule, the court retains jurisdiction over the case for a period of five years after the entry of a final decree so that it may "allocate material assets or liabilities" that were misstated or omitted when such misstatement or omission "materially affects" the division of the couple's assets and liabilities. *Id.*

¶2 But what standards and procedures govern a Rule 16.2(e)(10) motion? Further, where, as here, a party responds to a Rule 16.2(e)(10) motion by filing a motion to dismiss, does C.R.C.P. 12(b)(5) and the "plausibility" standard set forth in *Warne v. Hall*, 2016 CO 50, 373 P.3d 588, apply? And, is a party entitled to rely on allegations that are based on "information and belief" and to conduct discovery to support her Rule 16.2(e)(10) motion? Today we endeavor to answer all of these questions.

2

¶3    We hold that Rule 12(b)(5) and the plausibility standard in *Warne* do not apply to Rule 16.2(e)(10) motions. Rule 12(b)(5) and the plausibility standard govern motions to dismiss a claim for relief in a pleading, and a Rule 16.2(e)(10) motion is not a pleading. Instead, we hold that, consistent with C.R.C.P. 7(b), which governs motions practice in civil cases, a Rule 16.2(e)(10) motion must "state with particularity" the grounds on which it is premised (i.e., the reasons why relief is warranted). C.R.C.P. 7(b)(1). But we hold that this does not preclude allegations that are based on information and belief when the moving party lacks direct knowledge about those allegations. So long as the motion satisfies the particularity requirement in Rule 7(b)(1), it may include such allegations. Lastly, we hold that a party is not automatically entitled to conduct discovery to support her Rule 16.2(e)(10) motion. Rather, the court, in its discretion, may allow discovery or schedule a hearing (or both) if it concludes that the facts asserted in the motion are sufficient to justify doing so. In making this determination, the court should be mindful that the moving party must satisfy Rule 7(b)(1)'s particularity requirement and ultimately bears the burden of demonstrating by a preponderance of the evidence that she is entitled to relief. In the event the court finds that the facts asserted in the motion are not sufficient to justify a hearing or even discovery, it may deny the motion outright.

## I. Facts and Procedural History

¶4    Steven R. Durie ("Husband") commenced this dissolution of marriage action in April 2014. Pursuant to C.R.C.P. 16.2(e)(2), (4), he and his then-wife, Kelly J. Durie n/k/a Kelly J. Simmerman ("Wife"), subsequently exchanged sworn financial statements, mandatory disclosures, and supplemental disclosures. In line with C.R.C.P. 16.2(g), the parties jointly selected and retained an expert to value their businesses: Coin Toss, LLC, a holding company, and the two companies owned by Coin Toss—Rock Paper Scissors, Inc., d/b/a Secure Search ("Secure Search"), and Sandbox Sharing, LLC, d/b/a Safeguard from Abuse ("Safeguard from Abuse").[1]  As part of his work, the joint expert reviewed materials provided separately by Husband and Wife and considered discussions he had with each of them. Based on his valuation, the joint expert estimated that as of May 31, 2014, Coin Toss (including Secure Search and Safeguard from Abuse) had an investment value of $855,000 and a fair market value of $770,000.

¶5    After receiving the joint expert's report, Wife retained her own expert to perform a complete review of that report. Wife's expert eventually assigned a similar value to Coin Toss: $919,616. Based on the two experts' valuations, the

---

[1] Husband was the President and CEO of Secure Search, while Wife was the CEO of Safeguard from Abuse.

parties agreed to value Coin Toss at $878,589. The parties thereafter integrated this value into the property division of the marital estate set forth in their separation agreement. Pursuant to the separation agreement, Coin Toss was allocated (at a value of $878,589) to Husband as his sole and separate property, and that allocation, in turn, generated a financial payout to Wife in the amount of $338,548.[2] At the parties' request, the district court then incorporated the separation agreement into the decree of dissolution that entered in September 2014.

¶6 In October 2015, thirteen months after the court issued the decree of dissolution, Husband sold a portion of Secure Search's assets ("post-decree sale") to a Tennessee company, Ministry Brands, LLC, for $6,900,000, an amount more than 685% higher than the value assigned to Coin Toss in the separation agreement.[3] After learning about this transaction, Wife recalled that Husband had travelled to Tennessee around May 2014 while this dissolution proceeding was

---

[2] The separation agreement also required Husband to pay Wife maintenance.

[3] Our 685% calculation differs from Wife's 850% calculation for two reasons: (1) Wife asserts that the increase between the joint expert's valuation amount ($855,000) and the post-decree sale amount ($6,900,000) is 850%, but our calculation shows that the increase between those amounts is actually 707%; and (2) we assess the increase between the valuation amount used in the separation agreement ($878,589) — instead of the joint expert's valuation amount ($855,000) — and the post-decree sale amount ($6,900,000).

5

pending and the joint expert was valuing the parties' businesses. Believing she smelled a rat, Wife filed a motion pursuant to Rule 16.2(e)(10) to set aside or reopen the property division in order to reallocate the proceeds from the post-decree sale.

¶7 In addition to asserting that the post-decree sale amount was more than 850% higher than the joint expert's valuation amount and that Husband had travelled to Tennessee in May 2014, Wife alleged, based "on information and belief," that Husband had "engaged in negotiations to sell a portion" of Secure Search's assets before the separation agreement was executed and possibly before the joint expert's valuation was completed. Wife further alleged, again based "[u]pon information and belief," that Husband had "failed to disclose and intentionally concealed material facts that impacted the value of the parties' business[es] and the valuation" of the joint expert "and/or [had] failed to update the information to [the joint expert] or Wife once those negotiations commenced."

¶8 In response, Husband filed a motion to dismiss Wife's motion. He admitted that he had sold some of Secure Search's assets in October 2015 to Ministry Brands for $6,900,000, and that he had travelled to Tennessee around May 2014. But he denied that he had engaged in any negotiations related to the post-decree sale before 2015. Husband informed the court that he had received an out-of-the-blue email from Ministry Brands in February 2015, four months after the dissolution decree entered, expressing interest in acquiring "[b]ackground check services," the

6

type of services performed by Secure Search.[4]  To corroborate his position, Husband produced an "out of the blue" email—the email literally referred to itself as an "out of the blue" email—dated February 2015 from Jon Ellison, the vice president of business development and a senior partner at Ministry Brands.  In his email, Ellison opened with an apology "for the out of the blue e-mail," asked to be placed "in the strategic buyer category," and requested a call back to discuss "100% ownership, all cash deals" related to "[b]ackground check services."  As for the trip to Tennessee, Husband claimed that he had undertaken it to attend an annual conference and that it had nothing to do with the post-decree sale.

¶9     Although Husband did not cite Rule 12(b)(5) in his motion to dismiss, Wife urged the court to treat it as a Rule 12(b)(5) motion and to apply *Warne*'s plausibility standard in evaluating her Rule 16.2(e)(10) motion.  Since she believed her motion had stated plausible grounds for relief, Wife asked the court to deny Husband's motion to dismiss.  Wife also requested attorney fees pursuant to section 13-17-102, C.R.S. (2019), or, in the alternative, pursuant to section 14-10-119, C.R.S. (2019).

---

[4] The assets ultimately acquired by Ministry Brands included the faith-based customers of Secure Search's online background screening services (the majority of Secure Search's sales revenue).

¶10    The district court did as Wife suggested and treated Husband's motion as a Rule 12(b)(5) motion to dismiss. In applying *Warne*'s plausibility standard, it ruled that the allegations in Wife's Rule 16.2(e)(10) motion were insufficient "to nudge her claim from conceivable to plausible." Finding that Wife's motion did not satisfy *Warne*'s standard, the court granted Husband's motion to dismiss, which rendered her request for attorney fees moot.

¶11    Wife appealed, and a division of the court of appeals reversed. The division held that the district court erred in applying Rule 12(b)(5) and the plausibility standard because they govern pleadings, not motions. Relying instead on C.R.C.P. 8(e)(1), the division found that a party filing a Rule 16.2(e)(10) motion may make allegations based on information and belief. In so doing, the division recognized that, like Rule 12(b)(5), Rule 8(e)(1) refers to pleadings. But because Rule 8(e)(1) also provides that "[n]o technical forms of pleading or *motions* are required," the division felt that it permits a party to make allegations based on information and belief in a Rule 16.2(e)(10) motion. (Emphasis added.) Next, in the absence of any legal standard set forth in Rule 16.2(e)(10), the division concluded that a court must decide whether the moving party's allegations are sufficient to meet her burden of showing by a preponderance of the evidence that

she is entitled to relief. Finally, the division ruled that a party seeking relief under Rule 16.2(e)(10) is automatically entitled to conduct discovery.[5]

¶12 Husband then petitioned for certiorari review, and we granted his petition in part.[6]

---

[5] The division's last two determinations were somewhat unclear and inconsistent. With respect to the burden of proof, the division implied that the moving party must demonstrate in her motion by a preponderance of the evidence that she "is entitled to relief." But elsewhere the division said that a moving party need only allege facts in her motion that are sufficient to warrant some type of discovery (even if on a limited basis). On the discovery front, the division first stated that various provisions within Rule 16.2 supported Wife's "right" under Rule 16.2(e)(10) to conduct discovery. However, it then indicated that the reason Wife is entitled to conduct discovery on remand is that her motion contains "sufficient allegations to warrant discovery," which suggests that the division didn't view discovery as a matter of right.

[6] We granted certiorari to review four issues:

1. Whether C.R.C.P. 12(b)(5) and the "plausibility" standard set forth in *Warne v. Hall*, 2016 CO 50, 373 P.3d 588, apply to a motion under C.R.C.P. 16.2(e)(10).

2. Whether a moving party may make allegations on "information and belief" in a C.R.C.P. 16.2(e)(10) motion.

3. Whether a moving party is entitled to conduct discovery to support a motion under C.R.C.P. 16.2(e)(10).

4. What standards and procedures govern a motion under C.R.C.P. 16.2(e)(10).

9

## II. Standard of Review

¶13    Our standard of review when we interpret the Colorado Rules of Civil Procedure is de novo. *Mason v. Farm Credit of S. Colo., ACA*, 2018 CO 46, ¶ 7, 419 P.3d 975, 979. We also review de novo "a lower court's application of a legal standard." *Kutzly v. People*, 2019 CO 55, ¶ 8, 442 P.3d 838, 841.

## III. Analysis

¶14    Our rules of civil procedure govern "all actions, suits and proceedings of a civil nature," including domestic relations cases. C.R.C.P. 1(a). Rule 16.2 creates "a uniform procedure for resolution of all issues in domestic relations cases" in a manner that "reduces the negative impact of adversarial litigation wherever possible." C.R.C.P. 16.2(a). The rule addresses the management and facilitation of such cases by the court and includes provisions related to disclosure, discovery, and hearings. C.R.C.P. 16.2(c), (e), (f). It expressly applies to "post decree matters." C.R.C.P. 16.2(a).

¶15    Paragraph (e)(1) of Rule 16.2 imposes on parties "a duty of full and honest disclosure of all facts that materially affect their rights and interests." C.R.C.P. 16.2(e)(1). Each party is called upon to "affirmatively disclose all information that is material to the resolution of the case without awaiting inquiry from the other party." *Id.* In paragraph (e)(10), the rule more specifically requires parties "to provide full disclosure of all material assets and liabilities."

10

C.R.C.P. 16.2(e)(10). Under that paragraph, the court retains jurisdiction for a period of five years after entry of a final decree in case a party's disclosures turn out to have contained "misstatements or omissions." *Id.* In such a situation, the court may "allocate [the] material assets or liabilities" that were misstated or omitted if their misstatement or omission "materially affects the division of assets and liabilities." *Id.* However, Rule 16.2(e)(10) does not delineate the standards and procedures that govern a post-decree motion to allocate misstated or omitted material assets or liabilities. Desiring to shed light on the rule, we agreed to review the issues raised in Husband's petition.

¶16    We begin by analyzing whether the district court erred in applying Rule 12(b)(5) and *Warne*'s plausibility standard to resolve Wife's Rule 16.2(e)(10) motion. After concluding that it did, we consider the standards and procedures that should apply to a Rule 16.2(e)(10) motion. We hold that, consistent with Rule 7(b)(1), a Rule 16.2(e)(10) motion must "state with particularity" the grounds on which it is premised (i.e., the reasons why relief is warranted). C.R.C.P. 7(b)(1). But we hold that this does not preclude allegations that are based on information and belief when the moving party lacks direct knowledge about those allegations. So long as the motion satisfies the particularity requirement in Rule 7(b)(1), it may include such allegations. Lastly, we hold that a party is not automatically entitled to conduct discovery to support her Rule 16.2(e)(10) motion. Rather, the court, in

11

its discretion, may allow discovery or schedule a hearing (or both) if it concludes that the facts asserted in the motion are sufficient to justify doing so. In making this determination, the court should be mindful that the moving party must satisfy Rule 7(b)(1)'s particularity requirement and ultimately bears the burden of demonstrating by a preponderance of the evidence that she is entitled to relief. In the event the court finds that the facts asserted in the motion are not sufficient to justify a hearing or even discovery, it may deny the motion outright.

¶17 The division correctly concluded that the district court erred in dismissing Wife's motion outright based on Rule 12(b)(5) and *Warne*'s plausibility standard. But because we don't agree with all of the division's other determinations, we affirm its judgment, at least in part, on other grounds.

## A. Rule 12(b)(5) and *Warne*'s Plausibility Standard

¶18 Rule 12 lists "defenses and objections" a party may raise in a civil case. While "[e]very defense . . . to a claim for relief in any *pleading*" must be "asserted in the responsive pleading thereto if one is required," a party has the option of raising by separate motion the defense of "failure to state a claim upon which relief can be granted." C.R.C.P. 12(b)(5) (emphasis added).

¶19 Because Rule 12(b)(5) explicitly sets forth "failure to state a claim upon which relief can be granted" as a defense "to a claim for relief in any pleading," it has no application here. *In re Marriage of Runge*, 2018 COA 23M, ¶ 18, 415 P.3d 884,

12

887 (quoting C.R.C.P. 12(b)). As its title suggests, a Rule 16.2(e)(10) motion is a motion, not a pleading. *Id.* at ¶¶ 18–19, 415 P.3d at 887–88. *Compare* C.R.C.P. 7(a) (defining a "pleading" as "a complaint," an "answer," "a reply to a counterclaim," "an answer to a cross-claim," "a third-party complaint," "a third-party answer," and "a reply to an affirmative defense"), *with* C.R.C.P. 7(b)(1) (defining a "motion" as an "application to the court for an order"). Therefore, a party may not file a Rule 12(b)(5) motion to dismiss a Rule 16.2(e)(10) motion. And where, as here, a party files a motion to dismiss a Rule 16.2(e)(10) motion, the court may not treat the motion to dismiss as a Rule 12(b)(5) motion.

¶20 Nor is the plausibility standard in *Warne* applicable to a Rule 16.2(e)(10) motion. In *Warne*, we held that a complaint must state "a plausible claim for relief" or risk dismissal pursuant to Rule 12(b)(5) for failure to state a claim upon which relief can be granted. *Warne*, ¶¶ 2, 5, 373 P.3d at 590–91. Inasmuch as Rule 12(b)(5) does not apply to a Rule 16.2(e)(10) motion, neither does *Warne*'s plausibility standard. *Runge*, ¶ 16, 415 P.3d at 887.

¶21 Accordingly, we agree with the division that the district court erred in treating Husband's motion to dismiss as a Rule 12(b)(5) motion and in applying *Warne*'s plausibility standard. That Husband filed a motion to dismiss did not render Wife's Rule 16.2(e)(10) motion subject to Rule 12(b)(5) and *Warne*'s plausibility standard.

¶22　But if Rule 12(b)(5) and *Warne*'s plausibility standard are inapposite, then what standards and procedures govern a Rule 16.2(e)(10) motion?  To tackle this question, we turn first to Rule 7(b).

## B. Rule 7(b)(1)'s Particularity Requirement

¶23　Rule 7(b) controls motions practice in civil cases.  Titled "Motions and Other Papers," Rule 7(b) provides that, except when made during a hearing or trial, a motion "shall be made in writing, shall state with particularity the grounds thereof, and shall set forth the relief or order sought."  C.R.C.P. 7(b)(1).[7]  We see no reason to deviate from this particularity requirement in the context of a Rule 16.2(e)(10) motion.  In the absence of any provision in Rule 16.2(e)(10) or elsewhere in Rule 16.2 setting forth a different standard, there is no basis to immunize a Rule 16.2(e)(10) motion from Rule 7(b)(1)'s particularity requirement.  Therefore, we conclude that a Rule 16.2(e)(10) motion must comply with the particularity requirement in Rule 7(b)(1)—that is, it must identify with specificity the grounds in support of it or the reasons relief is warranted.

---

[7] By contrast, Rule 7(a) addresses "Pleadings."

14

¶24 So, does this determination necessarily preclude allegations in a Rule 16.2(e)(10) motion that are based on information and belief? As we discuss next, we think not.

## C. Allegations Based on Information and Belief

¶25 The division appeared to view Rule 7(b)(1)'s particularity requirement, on the one hand, and allegations based on information and belief, on the other, as mutually exclusive. Because it concluded that a Rule 16.2(e)(10) motion may contain allegations based on information and belief, it did not address the applicability of Rule 7(b)(1)'s particularity requirement. We disagree with this outlook. And, though the division correctly determined that a Rule 16.2(e)(10) motion may include allegations based on information and belief, it relied on C.R.C.P. 8(e)(1) for that proposition. We prefer to lean instead on C.R.C.P. 7(b)(2).

¶26 Like Rule 12(b)(5), Rule 8(e)(1) is a pleadings rule. Rule 8 is titled "General Rules of Pleading," and section (e) is titled "Pleading to be Concise and Direct; Consistency." In paragraph (1), Rule 8(e) provides that "[e]ach averment of a pleading" must be "simple, concise, and direct," and that a pleader "without direct knowledge" may make "allegations . . . upon information and belief." C.R.C.P. 8(e)(1). Given that a Rule 16.2(e)(10) motion is not a pleading, this language has no bearing on the analysis. The division appeared to recognize as much, but it nevertheless relied on Rule 8(e)(1) because that rule later states that

15

"[n]o technical forms of pleading or *motions* are required." (Emphasis added.) We view Rule 7(b)(2) as more directly on point.

¶27    Under Rule 7(b)(2), the rules that apply "to captions, signing and other matters of form of pleadings apply to all motions . . . provided for by these rules." Advancing allegations that are based on information and belief in a pleading pursuant to Rule 8(e)(1) is clearly a "matter[] of form." Rule 7(b)(2) thus extends to motions the provision in Rule 8(e)(1) permitting a pleading to contain allegations based on information and belief. Because nothing in Rule 7(b)(1) or in any other rule forbids allegations that are based on information and belief in motions in general, and because no authority prohibits such allegations in a Rule 16.2(e)(10) motion specifically, we conclude that Rule 7(b)(2) allowed Wife to include those types of allegations in her motion if she lacked direct knowledge about them.

¶28    We are sensitive to Husband's concern that allowing a Rule 16.2(e)(10) motion to include allegations based on information and belief may automatically entitle the moving party to conduct discovery to support her motion. However, we are confident that simultaneously requiring compliance with Rule 7(b)(1)'s particularity requirement will avert this undesirable result. Rule 7(b)(1)'s particularity requirement will serve to ensure that a moving party doesn't obtain, post-decree, a new bite at the discovery apple by simply relying on vague or

16

speculative assertions. Thus, under the standard we embrace today, while a Rule 16.2(e)(10) motion may include allegations based on information and belief, a motion that relies exclusively on such allegations runs a substantial risk of being dismissed outright for failure to comply with Rule 7(b)(1)'s particularity requirement.

¶29 Wife maintains, though, that a party seeking relief under Rule 16.2(e)(10) is inherently entitled to conduct discovery, regardless of the nature of the allegations advanced. For the reasons we articulate below, we disagree.

### D. No Inherent Right to Discovery to Support a Rule 16.2(e)(10) Motion

¶30 We read several provisions in Rule 16.2 as indirectly giving a district court authority to allow discovery in relation to a Rule 16.2(e)(10) motion. *See* C.R.C.P. 16.2(a), (b), (f)(4). But none of these provisions can be reasonably construed as entitling a party, as a matter of right, to conduct discovery in order to support her Rule 16.2(e)(10) motion. Rather, the cited provisions vest district courts with considerable discretion in making decisions regarding discovery. For example, Rule 16.2(a) explicitly envisions that the court will tailor "disclosure requirements, discovery, and hearings" based on "the needs of the case." Similarly, Rule 16.2(b) directs the parties, counsel, and the court to "evaluate each case at all stages to determine the . . . disclosures/discovery . . . necessary to prepare the case for resolution or hearing." And Rule 16.2(f)(4) instructs the court

17

to "grant all reasonable requests for additional discovery for good cause as defined in C.R.C.P. 26(b)(2)(F)."

¶31 Other provisions in Rule 16.2 underscore the abundant discretion district courts generally enjoy in managing domestic relations cases. For instance, Rule 16.2(b) says that in actively managing cases, the court "shall consider the needs of each case," may adopt a "Standard Case Management Order" that "takes into account the specific needs and resources of the judicial district," and may modify that standard order as needed.

¶32 The substantial discretion accorded to district courts in domestic relations cases, both in managing the litigation in general and in establishing the parameters of discovery specifically, informs our decision today. Hence, instead of concluding that a court is required to permit discovery whenever it receives a Rule 16.2(e)(10) motion, we hold that the court, in its discretion, may allow discovery or schedule a hearing (or both) if it concludes that the facts asserted in the motion are sufficient to justify doing so.[8] In making this determination, the court should be mindful that the moving party must meet Rule 7(b)(1)'s

---

[8] Of course, the court may hold off scheduling a hearing until whatever discovery it allows has been completed. Thus, the court could schedule a status conference or require further briefing after the authorized discovery has ended.

particularity requirement, *see supra*, and ultimately bears the burden of demonstrating by a preponderance of the evidence that she is entitled to relief, *see* § 13-25-127(1), C.R.S. (2019) (providing that "the burden of proof in any civil action shall be by a preponderance of the evidence"). In the event the court finds that the facts asserted in the motion are not sufficient to justify a hearing or even discovery, it may deny the motion outright.

¶33 Citing *Craig v. Rider*, 651 P.2d 397 (Colo. 1982), Husband urges us to reject the preponderance standard and to require "clear, strong and satisfactory proof" in a Rule 16.2(e)(10) motion. 651 P.2d at 402 (quoting *Riss v. Air Rental, Inc.*, 315 P.2d 820, 821 (Colo. 1957)). But *Craig* dealt with the caselaw applicable to motions to set aside default judgments and is thus distinguishable. As we explained in *Borer v. Lewis*, 91 P.3d 375 (Colo. 2004), our caselaw has "clearly established," pursuant to "the power reserved expressly to the judiciary for the promulgation of rules governing procedural matters," that "the burden of proof necessary to win a motion to set aside a default judgment" is "clear, strong and satisfactory proof" or "clear and convincing" evidence. 91 P.3d at 380–81. To prevent an irreconcilable clash of constitutional authority, we held in *Borer* that the legislature did not intend for section 13-25-127(1)'s preponderance standard to "override the 'clear and convincing' burden of proof" that our caselaw has long

applied in the context of a request to set aside a default judgment (a procedural matter). *Id.*

¶34     In stark contrast to the situation we faced in *Borer*, here, there is no inter-branch confrontation of a constitutional dimension because we have never implemented (through one of our rules or our caselaw) a burden of proof for Rule 16.2(e)(10) motions. We break new ground today. And because we choose the preponderance standard approved by the legislature for all substantive civil claims, instead of the clear and convincing standard we have applied to some procedural matters, there is no potential for conflict. Therefore, even assuming, as Husband asserts, that a Rule 16.2(e)(10) motion is a "procedural motion" subject to our province, instead of a "substantive civil claim[]" subject to the legislature's, *see Borer*, 91 P.3d at 380–81, this opinion and section 13-25-127(1) coexist in perfect harmony.

¶35     Alternatively, Husband contends that a Rule 16.2(e)(10) motion must establish a prima facie case based on admissible evidence. In the same vein, Husband advances a proposal that borrows from the procedural mechanisms of two different rules: C.R.C.P. 56 (governing summary judgment motions) and C.R.C.P. 59(d)(4) (governing motions for a new trial based on newly discovered evidence). We are unmoved by Husband's analytical framework. In our view, the standards and procedures we adopt today are faithful to the bountiful discretion

20

Rule 16.2 confers to district courts and strike the appropriate balance between allowing a deserving party to avail herself of the post-decree remedy in paragraph (e)(10) and the significant interest in finality.

¶36 We pause to stress the importance of finality in the standards and procedures we usher in today. It is axiomatic that there is "a definite public interest" in "the finality of civil judgments through which litigants acquire rights in the judicial process." *In re Marriage of Wolford*, 789 P.2d 459, 460 (Colo. App. 1989). The policy favoring finality is particularly pronounced in domestic relations cases. *Id.* Considering the compelling need for finality, the *Runge* division characterized the post-decree remedy created by Rule 16.2(e)(10) as "extraordinary" and "very narrow." ¶ 34, 415 P.3d at 890. We echo that sentiment. District courts must thus take care to reopen a final decree under Rule 16.2(e)(10) only in those cases where it is truly justified.

¶37 The court of appeals' decision in *Runge* illustrates the point. Because the wife there never alleged that her husband had omitted any specific information he was required to disclose but relied instead on her "suspicions and speculations," the division held that the "vague assertions" in her Rule 16.2(e)(10) motion were insufficient. *Id.* at ¶ 27, 415 P.3d at 889. Though the wife claimed that her husband had concealed information from her, the division noted that the record painted a markedly different picture. Despite receiving voluminous documentation from

21

her husband, retaining her own accounting expert to analyze that documentation, enjoying legal representation, and stating through counsel at the temporary orders hearing that she planned to schedule depositions, conduct further investigation, and have her husband's businesses valued, the wife inexplicably chose to enter into the separation agreement a month later without doing her due diligence. *Id.* at ¶¶ 28–30, 415 P.3d at 889.

¶38 The *Runge* division concluded that, rather than the husband omitting or misstating information, the wife had neglected to analyze and investigate the information he had disclosed to her. *Id.* at ¶¶ 35–39, 415 P.3d at 890–91. And, continued the division, she was not entitled to the legal equivalent of a mulligan. *Id.* at ¶¶ 31–32, 415 P.3d at 889–90. The division reasoned that Rule 16.2(e)(10) was not intended to allow an ex-spouse to conduct, post-decree, the analysis and investigation she consciously elected to forgo pre-decree. *Id.* at ¶ 32, 415 P.3d at 889–90. Therefore, ruled the division, the district court had sensibly denied the wife's Rule 16.2(e)(10) motion outright as not warranting discovery. *Id.* at ¶¶ 1, 3, 415 P.3d at 886.

¶39 What about the district court's ruling in this case? Should the court have granted Wife's request to conduct discovery? We examine this question now.

# E. Application

¶40 Wife's motion made the following pertinent allegations:

- The parties' joint expert estimated that, as of May 31, 2014, Coin Toss had an investment value of $855,000 and a fair market value of $770,000.

- In performing his valuation, the joint expert considered materials provided by the parties separately and discussions he had with each party.

- Wife entered into the separation agreement in reliance upon the joint expert's valuation.

- Pursuant to the separation agreement executed in September 2014, the couple's businesses were allocated to Husband (at a value of $878,589) as his sole and separate property.

- Thirteen months later, in October 2015, Husband sold a portion of Secure Search's assets to Ministry Brands, a Tennessee company, for $6,900,000, which was "850% more than the valuation" by the joint expert of all three businesses.

- Ministry Brands owns twenty-five brands, two of which Secure Search had done business with during the marriage.

- "Upon information and belief, Husband travelled to Tennessee in or about May 2014," just a few months before the separation agreement was executed.

- During the marriage, Husband was the president and CEO of Secure Search and was working in those capacities forty to sixty-five hours per week. Consequently, he was "intimately familiar with the company, its finances, its operations, and its potential for sale or acquisition or merger."

- "Upon information and belief, Husband had been in negotiations . . . involving a deal or potential deal to sell Secure Search," or a portion of it, before the separation agreement was executed "and/or possibly prior to the time that the joint expert . . . performed his valuation."

23

- "Upon information and belief, Husband failed to disclose and intentionally concealed material facts that impacted" the businesses' value and the joint expert's valuation "and/or failed to update the information" to the joint expert or Wife.

¶41 We recognize that a few of these allegations were based on information and belief. But we conclude that, as a whole, Wife's motion met Rule 7(b)(1)'s particularity requirement. We further rule that Wife alleged sufficient facts to warrant, at a minimum, an opportunity to conduct discovery. The ocean of difference between the joint expert's valuation of Coin Toss and the post-decree sale price for a portion of Secure Search, alone, raises red flags about Husband's pre-decree disclosures. When that chasm is considered objectively and in conjunction with the other circumstances present—including the temporal proximity between the separation agreement and the post-decree sale, Husband's travel to Tennessee around May 2014, and Husband's intimate familiarity with Secure Search—it becomes clear that Wife's allegations are sufficient under the standards and procedures we endorse today to justify granting her request to conduct discovery. We leave the determination of the scope and extent of such discovery to the district court.[9]

---

[9] We do not pass judgment on whether Wife will ultimately be able to carry her burden of proving by a preponderance of the evidence that she is entitled to relief. We simply find that her motion is sufficient to allow her to conduct discovery.

¶42 Because the district court denied Wife's motion outright by applying Rule 12(b)(5) and *Warne*'s plausibility standard, it erred. We therefore affirm the division's judgment reversing the district court's order.

## IV. Conclusion

¶43 We affirm the division's judgment, though we do so at least in part on other grounds. Further, we remand with instructions to return the case to the district court for additional proceedings consistent with this opinion. On remand, the district court should allow Wife to conduct whatever discovery it deems appropriate and then determine whether to hold a hearing.[10]

---

[10] We defer Wife's request for appellate attorney fees to the district court.

25