23CA0220 Marriage of Croghan 06-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0220
Weld County District Court No. 11DR1201
Honorable Meghan Patrice Saleebey, Judge

In re the Marriage of

Daniel P. Croghan,

Appellant,

and

Kay Lynn Croghan,

Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE WELLING
Schock and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

Griffiths Law PC, Christopher Griffiths, Lone Tree, Colorado; Schaffner Law
LLC, Jennifer Schaffner, Greenwood Village, Colorado, for Appellant

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this post-dissolution of marriage proceeding involving Daniel P. Croghan (husband) and Kay Lynn Croghan (wife), husband appeals the district court's decision to reopen proceedings pursuant to C.R.C.P. 16.2(e)(10) and allocate to wife a portion of an undisclosed asset. We affirm the judgment in part and reverse it in part and remand the case to the district court for further proceedings.

## I.     Background

¶ 2     In 2011, husband petitioned to dissolve the parties' twenty-two-year marriage. Both husband and wife exchanged sworn financial statements and filed certificates of compliance stating that they had complied with all mandatory financial disclosures required by C.R.C.P. 16.2. According to husband's certificate of compliance, he had disclosed his sworn financial statement, pay stubs from Aztech Software, Inc., a US Bank account statement, a balance sheet for Croghan Solutions, LLC, an auto loan statement, and a mortgage statement. But he didn't disclose his ownership interest in another entity, Excertus, LLC (now Excertus, Inc.), which was formed in 2009. In wife's sworn financial statement, she stated, in relevant part, that (1) "[husband] has [a] business interest in

Croghan Solutions and Excertus[, but t]he details of these interest[s] are unknown to me"; and (2) husband's "income is unknown from other businesses (Croghan Solutions, Excertus)." Ultimately, husband and wife signed a stipulated separation agreement that gave husband the right to retain "all of his interest" in Croghan Solutions. Soon after, in December 2011, the court entered a decree of dissolution of marriage.

## A. Wife's Motion to Reopen the Proceedings

¶ 3 Approximately four and a half years after the district court entered the decree of dissolution of marriage, wife filed a C.R.C.P. 16.2(e)(10) motion to reopen the proceedings. In her motion, wife alleged that husband had "omitted significant assets and materially misrepresented" his financial position in his financial disclosures by failing to disclose his business interest in Excertus (the undisclosed asset). More specifically, in her motion, wife alleged that, at the time of dissolution, husband was a member of Excertus and held a 50% share of the business, which earned him profits during the

marriage that were never properly allocated because of his failure to disclose.[1]

¶ 4     While this proceeding was pending, husband and Croghan Solutions were engaged in a civil suit with Excertus that, in part, dealt with whether husband had an ownership interest in Excertus. The district court stayed the proceedings on wife's motion to reopen while the civil suit was pending. The civil suit eventually settled, and in February 2022, after an approximately six-year delay in the proceedings due to the civil suit and court closures during the COVID-19 pandemic, the court held a two-day hearing on the motion to reopen. At the hearing, the court heard evidence about Excertus, Croghan Solutions, and another business, Apex Back

---

[1] In his brief, husband asserts, "The only information [w]ife identifies that she claims [h]usband should have disclosed were readily available corporate filing[s] with the Secretary of State." This is a mischaracterization of wife's motion to reopen. In the motion, wife contends that the Secretary of State filings show that husband owned 50% of Excertus at the time of the marriage and that it's therefore an "unallocated marital asset." Wife then alleges that she "was not provided statements concerning Excertus, Inc. Specifically, [she] was not provided with any documentation concerning income, liabilities, assets, business financial statements, loan applications, property, or any other relevant documentation concerning Excertus, Inc."

Office Solutions, Inc. (Apex), which was purchased by husband in 2012 with assets from Excertus.

### B. Evidence Presented at the Hearing and the District Court's Order

¶ 5 At the hearing, the district court heard testimony from husband; wife; wife's expert, Lauren Long; husband's Excertus business partner, Richard Robertson; and an independent auditor, Gary Schwartz. Husband, wife, Robertson, and Schwartz testified primarily to husband's interest in Excertus. Robertson and husband testified that during and after the marriage, husband received payments from Excertus through Croghan Solutions. Husband testified that he "was always an owner" of Excertus and that his 50% ownership interest in Excertus commenced in 2009. But evidence presented at the hearing indicated that husband never received a K-1 tax form, which an owner would expect to receive. Long prepared an expert report and testified to her valuation of Croghan Solutions, which included husband's ownership interest in Excertus and Apex.

¶ 6 In a written order entered after the hearing, the district court granted wife's motion to reopen the proceedings and divided

husband's interest in the undisclosed asset. In its order, the court found that, at the time of the dissolution, husband had a 50% ownership interest in Excertus, which was a marital asset. The court further found that husband had an affirmative duty to disclose his ownership interest and that husband had failed to disclose documents concerning his ownership interest in Excertus. Because of husband's failure to disclose relevant information, the court concluded that the separation agreement that the parties executed was "unfair and unconscionable."

¶ 7 In its findings, the court adopted Long's estimated valuation of husband's interest in the undisclosed asset at the time of the decree and, after adding interest for "loss of opportunity," allocated the cash equivalent of 60% of the value of the undisclosed asset to wife, which totaled $775,200.

## II. Analysis

¶ 8 Husband advances three arguments on appeal, contending that (1) the district court erred by reopening the proceedings pursuant to C.R.C.P. 16.2(e)(10); (2) the district court erred by relying on Long's report to value husband's interest in Excertus; and (3) we should vacate the district court's order because the

5

district court didn't consider husband's financial circumstances at the time of the hearing when dividing the undisclosed asset. We aren't persuaded that the district court erred by reopening the proceedings, but we agree that the district court erred by relying on Long's valuation. We therefore remand the case to the district court to reconsider the value of the undisclosed asset as of the time of the decree. Because the valuation of the undisclosed asset affects allocation, we decline to consider the merits of husband's third contention and remand to the district court to reconsider how to allocate the undisclosed asset.

### A. The District Court's Decision to Reopen the Proceedings

¶ 9 Husband contends that the district court erred by granting wife's motion to reopen the proceedings pursuant to C.R.C.P. 16.2(e)(10). We disagree.

#### 1. Legal Principles and Standard of Review

¶ 10 In domestic relations cases, the parties "owe each other and the court a duty of full and honest disclosure of all facts that materially affect their rights and interests." C.R.C.P. 16.2(e)(1). To fulfill this duty, "a party must affirmatively disclose all information that is material to the resolution of the case without awaiting

6

inquiry from the other party." *Id.* Subject to some exceptions, pursuant to C.R.C.P. 16.2(e)(2), a party must also provide all mandatory disclosures set forth in C.R.C.P. Form 35.1. As relevant here, C.R.C.P Form 35.1 requires that a party disclose "income tax returns for the three years before filing of the petition or post-decree motion . . . for any business in which a party has an interest entitling the party to a copy of such returns," C.R.C.P. Form 35.1(b), and financial statements for the last three years "[f]or every business in which a party has access to financial statements," C.R.C.P. Form 35.1(d).

¶ 11     If, after entry of a final decree, "a party discovers that the other party's disclosures contained misstatements or omissions, [that party] may seek relief pursuant to [C.R.C.P.] 16.2(e)(10)." *In re Marriage of Durie*, 2020 CO 7, ¶ 1 (citing C.R.C.P. 16.2(e)(10)). According to C.R.C.P. 16.2(e)(10),

> it is the duty of parties to an action for decree of dissolution of marriage, legal separation, or invalidity of marriage, to provide full disclosure of all material assets and liabilities. If a disclosure contains a misstatement or omission materially affecting the division of assets or liabilities, any party may file and the court shall consider and rule on a motion seeking to reallocate assets and liabilities

based on such a misstatement or omission,
provided that the motion is filed within 5 years
of the final decree or judgment.

Thus, under C.R.C.P. 16.2(e)(10), a district court must assess
(1) whether a party's disclosure "contains a misstatement or
omission"; and (2) if there is a misstatement or omission, whether
that misstatement or omission "materially affect[ed] the division of
assets or liabilities." *Id.*

¶ 12     We review the "district court's interpretation and application of
C.R.C.P. 16.2" de novo, *In re Marriage of Hunt*, 2015 COA 58, ¶ 10,
including the sufficiency of a party's allegations for relief under
C.R.C.P. 16.2(e)(10), *In re Marriage of Martin*, 2021 COA 101, ¶ 24.
But "[w]e review the [district] court's factual findings for clear error."
*In Interest of Becker*, 2017 COA 114, ¶ 27. "A court's factual
findings are clearly erroneous only if there is no support for them in
the record." *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

### 2.    The District Court Didn't Err by Granting Wife's Motion to Reopen the Proceedings

¶ 13     Because the district court found, and the record supports,
that husband's disclosures contained a misstatement or omission
that materially affected the division of assets and liabilities between

8

husband and wife, we conclude that the district court properly granted wife's motion to reopen the proceedings. *See* C.R.C.P. 16.2(e)(10).

### a. Husband's Disclosures Contained a Misstatement or Omission

¶ 14 The district court found that husband's disclosures contained a misstatement or omission because he failed to disclose his ownership interest in Excertus. Specifically, the district court found that husband had a 50% ownership interest in Excertus and failed to disclose documents concerning that ownership interest, including profit and loss statements, "the operating agreement, tax documents, information about disbursements[,] and other financial disclosures."

¶ 15 These findings are supported by the record. Admitted exhibits and multiple witnesses, including husband himself, indicated that husband had an ownership interest in Excertus at the time of the dissolution. But the sworn financial statement that husband provided during the dissolution proceedings didn't mention any ownership interest in Excertus.

¶ 16 Because husband failed to disclose his ownership interest in Excertus, his disclosures contained a misstatement or omission.

Thus, the district court correctly found that husband made a misstatement or omission.

¶ 17    A misstatement or omission alone, however, isn't enough to prompt reopening under C.R.C.P. 16.2(e)(10). Any misstatement or omission must also have "materially affect[ed] the division of assets or liabilities." C.R.C.P. 16.2(e)(10). This is where we turn to next.

   b.    Husband's Misstatement or Omission Materially Affected the Division of Assets or Liabilities Between the Parties

¶ 18    The district court found that husband's "ownership of Excertus . . . materially affects/affected [wife's] rights and interests" and that his failure to disclose his ownership interest in Excertus "contained a misstatement and an omission . . . pursuant to C.R.C.P. 16.2(e)(10)." Inherent in this finding is a conclusion that the misstatement or omission affected the division of assets or liabilities. *See* C.R.C.P. 16.2(e)(10). Thus, the record supports a determination that husband's failure to disclose his interest in Excertus materially affected the division of the marital estate. Indeed, because of husband's failure to disclose his interest in Excertus, the total value of that interest wasn't divided as part of the marital estate.

10

¶ 19    The materiality of the omission is further illustrated by two payments that were made to husband shortly after the decree was entered. Specifically, in the months immediately following the dissolution, husband received two payments totaling approximately $82,000, which Robertson testified that husband had earned before the dissolution. Wife didn't receive any portion of these payments or a share of the equity that generated this income because the payments were made after the decree had been entered.

¶ 20    Husband admitted that he "suspect[ed] [the payments were] more of an owner distribution," and the district court found that these were disbursements related to husband's ownership interest in Excertus and thus should have been divided as part of the marital estate. *See In re Marriage of Corak*, 2014 COA 147, ¶ 11 ("Marital property includes all property that either spouse acquires during the marriage. It does not include property that the spouses acquired before the marriage, or that they have agreed will remain separate.").

¶ 21    The record supports that husband's misstatement or omission materially affected the division of the assets. Thus, the district court didn't err.

c.     Husband's Arguments to the Contrary Are Unavailing

¶ 22     Husband makes two arguments against reopening the proceedings despite his failure to fully disclose his assets.  First, he argues that the district court erred by reopening the proceedings because wife's knowledge of the existence of Excertus and Croghan Solutions precluded the reopening.  And second, he argues that the district court shouldn't have reopened the proceedings because his ownership interest in Excertus was never determined in the civil suit.  We aren't persuaded by either of husband's arguments.

i.     Wife's Knowledge of Excertus and Croghan Solutions

¶ 23     Husband contends that wife's knowledge of the existence of Excertus and Croghan Solutions should have precluded the court from reopening the proceedings.  But because wife didn't know the *nature* of husband's ownership interest in Excertus and husband didn't disclose any information about the nature of that interest, wife's knowledge about the *existence* of Excertus isn't enough to preclude the court from reopening the proceedings.

¶ 24     As an initial matter, we address husband's assertion that divisions of this court have approached C.R.C.P. 16.2(e)(10) differently, with some divisions applying C.R.C.P. 16.2(e)(10) more

12

liberally, *see, e.g., In re Marriage of Evans*, 2021 COA 141; *Hunt,* 2015 COA 58, and other divisions applying C.R.C.P. 16.2(e)(10) more narrowly, *see, e.g., In re Marriage of Runge*, 2018 COA 23M; *Martin*, 2021 COA 101. According to husband, the cases that more narrowly apply C.R.C.P. 16.2(e)(10) generally hold "that where a spouse provides the other with information and the other spouse chooses not to review or pursue further inquiry based on the information disclosed, the [district] court should not reopen the property division." We disagree with husband's assertion, however, that divisions of this court have taken two distinct approaches when deciding issues regarding C.R.C.P. 16.2(e)(10). Instead, any discrepancies in C.R.C.P. 16.2(e)(10) cases are attributable to the distinct factual circumstances of each case rather than divergent applications of the law.

¶ 25 Husband argues that the facts of this case are similar to those that counsel for a narrower application of C.R.C.P. 16.2(e)(10) and attempts to distinguish the facts of this case from *Hunt* and *Evans*. Specifically, according to husband, because wife knew that Excertus and Croghan Solutions existed and knew that husband had performed work for and earned income from those entities, the

proceedings shouldn't have been reopened. As support for this assertion, husband points to wife's acknowledgment of Excertus and Croghan Solutions in her sworn financial statement, his disclosure of a bank account for Croghan Solutions, his disclosure of a balance sheet for Croghan Solutions, and wife's knowledge that husband was performing contract work unrelated to his job at Aztech Software.

¶ 26    To be sure, that wife knew of Excertus's existence is readily apparent from her sworn financial statement, in which she states that husband's "income is unknown from other businesses (Croghan Solutions, Excertus)" and "[husband] has [a] business interest in Croghan Solutions and Excertus. The details of these interest[s] are unknown to me." But the district court found, and the record supports, that while wife knew that Excertus and Croghan Solutions existed, she lacked fundamental knowledge about the entities and was merely aware that husband had side jobs. Indeed, she said as much in her sworn financial statement. And we agree with the district court that "[t]here is a fundamental, dramatic difference between [husband] receiving payments to

14

Croghan Solutions, LLC from Excertus as an employee who receives a 1099, and [husband] having a 50% ownership in Excertus."

¶ 27    Thus, while we agree with husband that, unlike in *Evans,* wife had *some* knowledge of the undisclosed asset before the dissolution, *see Evans,* ¶¶ 4, 31, we disagree with husband's attempt to distinguish his case from *Hunt.* To put a sharper point on it, although wife had some knowledge about Excertus and Croghan Solutions, similar to *Hunt,* she didn't have "all the information she was entitled to receive." *Hunt,* ¶ 19.

¶ 28    We further disagree with husband's assertion that his incomplete disclosures about Croghan Solutions in his sworn financial statements should have prompted wife to request more information. While husband wasn't required to provide an opinion on the value of his interests in Croghan Solutions and Excertus, he was required to present wife with all relevant financial documents relating to these entities. *See Runge,* ¶ 35 ("Regarding the value of [husband's business interest], the rule requires disclosure of material 'facts,' 'information,' and 'assets and liabilities.' It does not mandate that husband provide his opinion of the value of a disclosed asset.") (citation omitted); *see also Evans,* ¶ 34 (holding

15

that wife shouldn't "have had to conduct a thorough business evaluation to determine the existence of a marital asset that husband had an affirmative obligation to disclose" even though she may have discovered the existence of the asset if she had conducted a business evaluation).  Therefore, based on the facts and circumstances of this case, we reject the notion that wife's failure to request more information about Excertus and Croghan Solutions before the parties signed the stipulation bars her from invoking C.R.C.P. 16.2(e)(10) to reopen the proceedings for reallocation of the property distribution.

¶ 29	The district court appropriately characterized the problem with husband's argument when it stated that husband's failure to disclose is more egregious than in *Hunt* because, in this case, husband didn't even disclose the nature of his business interest in Excertus.  And because wife didn't know the *nature* of husband's relationship to or interest in Excertus, we can't agree that wife's knowledge of the existence of Excertus or Croghan Solutions should have precluded reopening under C.R.C.P. 16.2(e)(10).

### ii. The Absence of a Determination of Husband's Ownership Interest in the Civil Suit

¶ 30 Husband next argues that because there wasn't a determination in the civil case that he had an ownership interest in Excertus, the district court erred by granting wife's motion to reopen. But given husband's testimony that he "was always an owner" of Excertus, we aren't persuaded by this argument. Further, we disagree with husband's contention that the "civil court had exclusive jurisdiction" over whether husband possessed an ownership interest in Excertus in 2011, the year the marriage was dissolved.

¶ 31 Simply put, because there is record evidence supporting the district court's determination that husband failed to fully disclose his ownership interest in Excertus at the time of dissolution and because record evidence supports a determination that husband's failure to disclose materially affected the division of the parties' assets and liabilities, the court didn't err by reopening the proceedings pursuant to C.R.C.P. 16.2(e)(10).

B.    The District Court's Valuation of the Undisclosed Asset

¶ 32    We now turn to husband's contention that the district court erred by relying on Long's report to value husband's interest in Excertus.  We agree with husband that, by relying on Long's report and testimony, the district court erroneously valued husband's interest in Excertus.  Based on this, we reverse the district court's allocation of the undisclosed asset because it's predicated on the erroneous valuation.

1.    Legal Principles and Standard of Review

¶ 33    When allocating undisclosed property pursuant to C.R.C.P. 16.2(e)(10), "the court should consider the section 14-10-113(1)[, C.R.S. 2024,] factors."  *Evans*, ¶ 51.  Section 14-10-113 provides that the court must value an asset "as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree."  § 14-10-113(5).  This date-of-decree valuation approach applies to "previously misstated or omitted asset[s]."  *Evans*, ¶ 52.

¶ 34    "Valuing property is within the trial court's discretion, and the court's determination will not be disturbed on appeal if it is reasonable in light of the evidence as a whole."  *In re Marriage of*

18

*Krejci*, 2013 COA 6, ¶ 23. "[A]n appellate court must not disturb a trial court's decision regarding division of property unless there has been a clear abuse of discretion." *In re Balanson*, 25 P.3d 28, 35 (Colo. 2001). "A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or misapplies the law." *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

### 2. Additional Facts

¶ 35 At the hearing, Long testified about her valuation report on Croghan Solutions, which considered husband's ownership in Excertus and Apex. She testified that when valuing a business, she normally would use "historical data to project the future cash flows of a business or the future profitability," but in this case, because she already knew the actual cash flows of the business, she didn't have to predict. Instead, she only needed to "determine what payments were received and what they were received for."

¶ 36 According to Long's report, which was admitted into evidence at the hearing, she used the "discounted cash flow method" which "calculates the present value of the future cash flows using a discount rate." To assist with her calculation, she used the cash flows for Croghan Solutions for years 2012 through 2016 — the five

years immediately *following* the dissolution of the marriage — and she included the discounted value of a promissory note that husband received in 2020 in the civil suit settlement concerning Excertus. Long concluded that the value of Croghan Solutions, including direct and indirect ownership of Excertus and Apex, at the time of the divorce, would have been $596,000 (rounded), and that, with a "statutory interest rate of 8%," its value as of the date of her report in 2021 would be $1,291,596. At the hearing, husband never provided expert testimony on the value of his interest in Excertus or Croghan Solutions at the time of the dissolution.

¶ 37    The district court adopted Long's valuation of husband's interest in the undisclosed asset at the time of the decree.

### 3.    The District Court's Valuation of the Undisclosed Asset Was Erroneous

¶ 38    As best we can discern, Long valued husband's interest in Croghan Solutions (including his ownership in Excertus and Apex) based exclusively on financial data from 2011 through 2017 and 2020 (the year husband received the promissory note), and then she used a discount rate to determine what the value of husband's

20

interest would have been at the time of the dissolution in 2011. If Long had been hired in 2011 to value the undisclosed asset, she would have taken pre-dissolution financial data and used it to forecast future cash flows and discount them back rather than using the actual financial data for the five years following the dissolution.

¶ 39 The fundamental problem with Long's approach — and the district court's reliance on it — is that she valued the undisclosed asset solely based on post-dissolution data. And, while the district court has discretion when valuing marital property, its valuation is erroneous if it fails to value an undisclosed asset as of the date of the decree. *See Krejci*, ¶ 23 (the district court has discretion when valuing property); *Evans*, ¶ 52 (the district court "must" value misstated or omitted assets "as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree" (quoting § 14-10-113(5))). We don't go so far as to say that, when determining an asset's value post-dissolution, it's per se unreasonable to consider post-dissolution financial data. In certain situations, it might be reasonable for an expert or the court to look at later financial data to confirm or rebut

the pre-dissolution data. But it isn't proper to exclusively rely on post-dissolution data, as Long appears to have done here.

¶ 40 Indeed, our suspicion that Long's methodology is flawed is confirmed by her reliance on the promissory note that husband received approximately nine years after the dissolution. Long used the discounted value of the promissory note, at least in part, to calculate the value of husband's interest in Excertus. But it appears that husband's receipt of the promissory note dealt, at least in part, with the sale of intellectual property that, in all likelihood, wasn't in existence at the time of the dissolution. Thus, while the promissory note may have partially concerned husband's ownership interest in Excertus, the value of the promissory note certainly can't be attributed entirely to the value of husband's ownership interest in Excertus at the time of the dissolution. Nor do we understand how it relates to the value of the entity at the time of the dissolution.

¶ 41 We acknowledge that the district court had valuation information from only one source because husband didn't retain his own expert to opine on the value of his interest in the undisclosed asset at the time of the decree. But husband highlighted flaws in

Long's analysis during his cross-examination. And just because it's the only expert valuation doesn't mean the court must accept it in its entirety. *See In re Marriage of Page*, 70 P.3d 579, 582 (Colo. App. 2003) (the district court has "discretion to choose the property valuation of one party over that of the other or to make its own reasonable determination of value"). Because it appears that the district court accepted a valuation of husband's interest in the undisclosed asset that is fundamentally flawed, the court erred.

### C. The Court's Failure to Consider Husband's Financial Circumstances

¶ 42 Husband's final contention is that we should vacate the district court's order because it incorrectly allocated the undisclosed asset by failing to fully and properly consider his financial circumstances at the time of allocation.

¶ 43 When allocating an undisclosed asset, the court "must consider the parties' economic circumstances at the time of the C.R.C.P. 16.2(e)(10) hearing." *Evans*, ¶ 54; *see also* § 14-10-113(1)(c). Here, it's clear from the record that the court allocated a portion of the undisclosed asset to wife without complete information about husband's current financial circumstances. But

23

husband bears considerable responsibility for the court having an incomplete picture of his then-current financial circumstances. Indeed, prior to and at the hearing, husband objected to the district court's order that he supply an updated sworn financial statement and C.R.C.P. 16.2 disclosures. But after taking the issue under advisement, the court ruled that an updated sworn financial statement wasn't necessary because they weren't relevant to the proceedings. It appears from the record that husband may have made the decision not to provide his updated sworn financial statement because he didn't expect the court to resolve whether to reopen the proceedings at the same time as deciding the undisclosed asset's value and how it should be properly allocated.

¶ 44    The record is at least ambiguous as to whether the court put husband on notice that it would make the valuation and allocation determinations at the same time as deciding whether to reopen the proceedings. Husband played a dangerous game when he declined to provide his sworn financial statement in advance of the hearing. But because of the ambiguity in the record as to what would be decided at the hearing and because we are remanding the case to the district court for reconsideration of the value of the undisclosed

asset, we don't need to reach the issue of whether the district court erred by allocating husband's interest in the undisclosed asset without considering his financial circumstances at the time of the hearing.

¶ 45 Indeed, given our clarification regarding the proper approach to valuing the undisclosed asset, on remand the court should permit both parties to present new or additional evidence on both the value of the undisclosed asset at the time of the dissolution and their current financial circumstances, which the court must consider when allocating the undisclosed asset. It will be up to the district court, in the exercise of its discretion, to manage discovery and disclosures related to this additional evidence. *See Durie*, ¶ 32 (holding that when considering a C.R.C.P. 16.2(e)(10) motion, "the court, in its discretion, may allow discovery or schedule a hearing (or both) if it concludes that the facts asserted in the motion are sufficient to justify doing so").

### D. Wife's Request for Attorney Fees

¶ 46 Wife requests that we award her attorney fees incurred on appeal. As grounds for an award of attorney fees, she cites section 14-10-119, C.R.S. 2024, contending that there is a significant

disparity in the parties' financial resources, and C.A.R. 38(b) and section 13-17-102, C.R.S. 2024, contending that husband's appeal was groundless and frivolous. We decline to award wife attorney fees under section 13-17-102 and C.A.R. 38(b) because husband's appeal isn't groundless or frivolous, as evidenced by our decision to partially reverse the district court's judgment. *See Martin*, ¶ 42. But we remand to the district court the issue of whether wife is entitled to an award of her appellate attorney fees pursuant to section 14-10-119 and, if so, in what amount. *See Martin,* ¶ 42.

## III.    Disposition

¶ 47     The judgment is affirmed in part and reversed in part. The case is remanded to the district court for (1) reconsideration of the value of husband's interest in the undisclosed asset at the time of the dissolution; (2) reallocation of the undisclosed asset based on the new valuation; and (3) determination of an award of appellate attorney fees under section 14-10-119. On remand, the court may, in its discretion, permit the parties to present additional evidence on any matter relevant to the valuation and allocation of the undisclosed asset, including expert testimony, but the court must permit both parties to present new evidence regarding their current

26

financial circumstances including updated sworn financial statements.

JUDGE SCHOCK and JUDGE BERGER concur.